# APPENDIX 5

LEXSEE 2006 U.S. DIST. LEXIS 34637

**PRIME SHIPPING COMPANY LTD., Plaintiff, -v- WAJILAM EXPORTS(S) PTE. LTD., Defendant.**

06 Civ. 1183 (JSR)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2006 U.S. Dist. LEXIS 34637; 2007 AMC 210*

May 31, 2006, Decided
June 2, 2006, Filed

COUNSEL: [*1] For Prime Shipping Company Ltd., Plaintiff: Patrick F. Lennon, Tisdale & Lennon, LLC, New York, NY.

For BNP Paribas Singapore, Claimant: Francis Henry McNamara, Cardillo & Corbett, New York, NY.

JUDGES: JED S. RAKOFF, U.S.D.J.

OPINION BY: JED S. RAKOFF

OPINION

*MEMORANDUM ORDER*

JED S. RAKOFF, U.S.D.J.

On February 15, 2006, this Court granted an ex parte Order for Process of Maritime Attachment and Garnishment sought by plaintiff in the amount of $ 484,754.48, and process was served upon American Express Bank ("AEB"). AEB, in response, restrained the transfer of the proceeds of a letter of credit. On April 19, 2006, claimant BNP Paribas Singapore ("BNP") moved pursuant to Supplemental Rule E 4(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims to vacate the attachment, on the grounds that the funds being transferred -- with the exception of $ 11,640.27 in interest -- were owed to it, and not to defendant Wajilam Exports ("Wajilam"). For the reasons that follow, the Court grants the motion.

Wajilam sells logs to buyers in Asia. On August 20, 2005, one such buyer obtained a negotiable letter [*2] of credit to purchase a cargo of logs. The face amount of the letter of credit is $ 466,685.00, with 180 days' interest, and the letter of credit lists defendant Wajilam as the beneficiary. The terms of the letter of credit state that its "dc amt" is "available with/by" "any bank in Singapore by negotiation," with "drafts at" "180 days from the dt of negotiation." Affidavit of Frances McNamara, April 18, 2006, ("McNamara Aff."), Exh. 3 (Declaration of Faris Tan) ("Tan Decl."), Exh. B (the letter of credit).

On August 25, 2005, Wajilam applied to BNP for discount financing of this sale; BNP purchased the letter of credit "subject to final payment" and credited Wajilam's account for $ 498,316.36 (the purchase price of $ 511,660.22 minus $ 13,343.86 in fees and interest). *Id.* PP3, 7 & Exh. D. BNP forwarded documents under the credit to Andhra Bank of Calcutta, India (the credit's issuer), and on September 9, 2005, Andhra Bank acknowledged the purchase and accepted the documents forwarded. *Id.* Exhs. C & E. Payment was therefore due on February 21, 2006, *id.* Exh. E, and on February 23, 2006, Andhra wired instructions to AEB to transfer the proceeds of the credit to BNP's account, [*3] designating BNP as the beneficiary of the funds. *Id.* Exh. F. On February 28, 2006, however, AEB informed BNP that it had stopped the transfer of funds pursuant to the attachment order. *Id.* P10. BNP now seeks vacatur of the attachment except for $ 11,640.27 in interest.[1]

---

[1] BNP does not seek release of the portion of the credit that represents the interest owed on the purchase price because it received its interest and fees when it purchased the credit at a discount.

---

Under *Supplemental Rule E(4)(f)*, plaintiff bears the burden of proving the attachment was proper. Property suitable to attachment under *Supplemental Rule B* is broadly defined and includes debts owed to defendant, even those that have not yet fully matured, so long as the defendant's entitlement to the credit or interest in the debt is clear. *See Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 276 (2d Cir. 2002)*. Plaintiff, seeking to benefit from Rule B's expansive scope, argues that the funds

Case 1:07-cv-07101-CM   Document 15-3   Filed 09/04/2007   Page 3 of 18

Page 2

2006 U.S. Dist. LEXIS 34637, *; 2007 AMC 210

attached represent "either [*4] a payment by [the buyer] to Wajilam, or Wajilam's debt to BNP, or both" because, by virtue of BNP's purchase of the credit being "subject to final payment," the negotiation was, in plaintiff's words, only "conditional." *See* Pl. Sur-Reply 2.

This argument, however, entirely misapprehends the nature of ordinary letters of credit, including this one. A letter of credit is essentially a contractual agreement between a bank (called the issuing bank) and a beneficiary who is owed funds from the bank's customer. For centuries one of its principal uses has been as a method of facilitating payment for transactions in goods, because, by guaranteeing the seller payment upon presentation of various documents specified by the terms of the credit itself, it serves to assure both buyer and seller of prompt payment upon performance. *See First Commercial Bank v. Gotham Originals, Inc., 64 N.Y.2d 287, 475 N.E.2d 1255, 1258, 486 N.Y.S.2d 715 (N.Y. 1985).* That is, the issuing bank becomes obligated to pay upon presentation of adequate documents; no obligation runs with the goods themselves. *Id. at 1259.* Accordingly, a fundamental principle of letters of credit is "that the issuing bank's obligation [*5] to honor drafts drawn on a letter of credit by the beneficiary is separate and independent from any obligation of its customer to the beneficiary under the sale of goods contract and separate as well from any obligation of the issuer to its customer under their agreement." *Id.* (internal citations omitted). Put simply, a letter of credit facilitates commerce by serving as an unencumbered method of payment. Given these inherent aspects of letters of credit, plaintiff's position cannot be sustained, since payment under the letter of credit must be considered wholly apart from the underlying debt owed to Wajilam by the buyer of the logs, and, similarly, from any contractual relationship between BNP, the negotiating bank, and Wajilam, its customer. The proceeds therefore cannot be considered a debt owed to Wajilam by any party, whether the buyer or the negotiating bank. Indeed, Andhra Bank became "directly, primarily and unconditionally obligated" to pay BNP at the moment it accepted the conforming documents presented by BNP, *id. at 1260; see also Supreme Merchandise Co. v. Chemical Bank, 70 N.Y.2d 344, 514 N.E.2d 1358, 1359-60, 520 N.Y.S.2d 734 (N.Y. 1987),* and, accordingly, BNP, [*6] not Wajilam, was the proper beneficiary of the letter of credit's proceeds.

As Judge Leval noted twenty-two years ago, "[l]etters of credit commonly may be negotiated by the beneficiary at banks other than the issuing or confirming bank. Such banks freely accept drafts on such letters in confidence that the issuing bank will stand behind them." *Diakan Love v. Al-Haddad Bros. Enters., 584 F. Supp. 782, 785 (S.D.N.Y. 1984).* To permit attachment of funds properly owed to a negotiating bank would put at risk the certainty of payment that is the very essence of a letter of credit and that enables the letter of credit to serve "as an essential lubricant" to "the wheels of international trade." *Id.* The letter of credit here in issue having been negotiated by BNP, and the conforming documents having been presented to Andhra Bank and accepted by it, BNP's motion to vacate the attachment of $ 473,114.21 of BNP's property is hereby granted.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York

May 31, 2006

# APPENDIX 6

LEXSEE

TIDE LINE, INC., Plaintiff, -against- EASTRADE COMMODITIES, INC., and TRANSCLEAR, S.A., Defendants.

06 CV 1979 (KMW)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2006 U.S. Dist. LEXIS 95870

August 15, 2006, Decided

**SUBSEQUENT HISTORY:** Request granted *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS 60770 (S.D.N.Y., Aug. 25, 2006)

**COUNSEL:** [*1] For Tide Line, Inc., Plaintiff: Thomas Leonard Tisdale, LEAD ATTORNEY, Charles Edmund Murphy, Tisdale & Lennon, LLC, New York, NY.

For Transclear S.A., Defendant: Dan J. Schulman, LEAD ATTORNEY, Salans, New York, NY.

For Transclear S.A., Counter Claimant: Dan J. Schulman, LEAD ATTORNEY, Salans, New York, NY.

**JUDGES:** Kimba M. Wood, United States District Judge.

**OPINION BY:** Kimba M. Wood

**OPINION**

ORDER

WOOD, U.S.D.J.:

I. Overview

Defendant Transclear, S.A. ("Transclear") moves to vacate this Court's March 14, 2006, Ex Parte Order for Process of Maritime Attachment, as to Transclear only. For the reasons given below, the Court grants Defendant Transclear, S.A.'s motion to vacate this Court's March 14, 2006, Ex Parte Order for Process of Maritime Attachment, as to Transclear only, grants Tide Line's request for leave to file an Amended Verified Complaint with a new request for an Attachment Order so long as no objections are filed by August 23, 2006, directs that Tide Line file the Amended Verified Complaint with a new request for an Attachment Order by August 25, 2006, and stays the release of the attached funds pending the issuance of a new Attachment Order in connection [*2] with the Amended Verified Complaint and the serving of a new writ of attachment on the bank, so long as the writ of attachment is served by August 30, 2006. [1]

> 1   Transclear has also filed an Answer and Counterclaims against Tide Line Inc. ("Tide Line"), seeking damages for the attachment; Tide Line has moved to dismiss those counterclaims. Transclear's counterclaims and Tide Line's motion to dismiss those counterclaims will be addressed in a separate order.

II. Background

On March 14, 2006, Tide Line Inc. ("Tide Line") filed a Verified Complaint (the "Complaint"), against Eastrade Commodities Inc. ("Eastrade Inc.") and Transclear, seeking an ex parte order for process of maritime attachment and garnishment pursuant to *Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims* of the Federal Rules of Civil Procedure ("*Supplemental Rule B*") and to the Federal Arbitration Act (originally the United States Arbitration Act), *9 U.S.C. §§ 1 and 8*. The [*3] Complaint alleges that: 1) Tide Line, "a foreign company duly organized and operating under the laws of Greece," Compl. P 2, chartered a vessel it owns, the M/V "Levantes A" (the "Vessel"), to Eastrade Inc., which is, upon information and belief, "a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law, with principal place of business in Panama," Compl. P 5; 2) disputes arose during the course of the charter party contract; 3) Eastrade Inc. breached the contract, resulting in damages to Tide Line for a total sum of $ 193,198.15; and 4) Tide Line was therefore preparing to initiate arbitration proceedings against Eastrade Inc. (but not Transclear) in London, and expected to recover a total sum of $ 292,636.28 (including the principal claim, interest, at-

torneys' fees and costs, and arbitration costs). The Complaint also alleges, upon information and belief, that Transclear "was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law, with principal place of business in Nyon, Switzerland," Compl. P 4, and that: "Upon information and belief, Defendant Transclear acts as paying [*4] agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant Eastrade," Compl. P 13. This is the only allegation in the Complaint as to Transclear's alleged involvement in the matter. Finally, the Complaint alleges that defendants Eastrade Inc. and Transclear cannot be found within this District within the meaning of *Supplemental Rule B* but have assets within the district.

On March 14, 2006, based on the Verified Complaint, and the Affidavit in Support of Prayer for Maritime Attachment of Thomas L. Tisdale, Tide Line's counsel ("Tisdale Aff."), and pursuant to *Supplemental Rule B*, the Court granted Tide Line an Ex Parte Order for Process of Maritime Attachment ("Ex Parte Attachment Order") against the defendants, for the amount of damages stated in the Verified Complaint. On March 22, 2006, Tide Line, pursuant to the Ex Parte Attachment Order, attached the sum of $ 270,000, belonging to Transclear, at Citibank. See Letter from Thomas L. Tisdale to Transclear S.A. (Mar. 22, 2006), attached as Ex. A to Affidavit of Service, which is attached as Ex. 1 to Tide Line's Proof of Service, dated May 11, 2006. An exchange of correspondence between [*5] counsel for Tide Line and Transclear followed; ultimately, Tide Line did not release the attachment.

On June 22, 2006, Transclear moved to vacate the Ex Parte Attachment Order as to Transclear. Judge William H. Pauley III, sitting in Part I, signed an Order to Show Cause, ordering Tide Line to show cause why an order should not be issued, pursuant to Rules B and E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, vacating this Court's March 14, 2006, Ex Parte Attachment Order as to Transclear, and setting an inquest for assessment of damages against Tide Line for attaching and failing to voluntarily release funds belonging to Transclear. [2] A hearing as to Transclear's motion to vacate was held on July 14, 2006. [3]

> 2 In addition to moving to have the Ex Parte Attachment Order vacated as to it, Transclear filed an Answer and Counterclaims (for "wrongful attachment and abuse of process related to the attachment" and "wrongful attachment and abuse of process related to Plaintiff's refusal to release the funds that are the subject of the attachment"), seeking damages against Tide Line, and requesting that Tide Line post counter-security in the amount of $ 2 million, pursuant to *Rule E(7)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims* of the Federal Rules of Civil Procedure. See Defendant Transclear, S.A.'s Answer and Counterclaims ("Answer and Countercl."). Tide Line has filed Cross-Motion to Dismiss Counterclaims. Transclear's counterclaims, and Tide Line's motion to dismiss them, will be addressed in a separate order.

[*6]

> 3  Under *Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims* ("*Supplemental Rule E(4)(f)*"), "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." According to this Court's Local Rules, "[t]he adversary hearing following arrest or attachment or garnishment that is called for in *Supplemental Rule E(4)(f)* shall be conducted by a judicial officer within three court days, unless otherwise ordered." *Local Admiralty Rule E.1*. In this case, Judge William H. Pauley III, sitting in Part I, signed the Order to Show Cause, setting the date of the hearing for July 11, 2006. As explained in this Court's Order dated July 11, 2006, the Court adjourned the hearing for further submissions to be made.

III. Discussion

A. Legal Standard

*Supplemental Rule B* provides, in relevant part:

> If a defendant is not found within the district . . ., a verified [*7] complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property -- up to the amount sued for -- in the hands of garnishees named in the process. The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process

enforcing the court's order upon application without further court order.

Fed. R. Civ. P. *Supp. Rule B(1)*. As recently summarized by the Court of Appeals for the Second Circuit:

> To begin the process, a plaintiff must file a verified complaint praying for an attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. [Fed.R.Civ.P. *Supp. Rule B(1)*.] If the plaintiff's filings comply with these conditions, the court must enter an order authorizing the attachment, [*8] which the plaintiff may then serve on any persons in possession of the defendant's property located within the district. The order of attachment may be requested and granted ex parte, though notice of the attachment to the defendant via appropriate service is required. Id. *Supp. Rules B(2), E(3)*.

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 438, 2006 WL 2129336, at *3, 2006 U.S. App. LEXIS 19302, at *8-*9 (2d Cir. 2006). See also Fed. R. Civ. P. *Supp. R. B* advisory committee's note to 1985 Amendment ("[*Supplemental Rule B(1)*] envisions that the order will issue when the plaintiff makes a prima facie showing that he has a maritime claim against the defendant in the amount sued for and the defendant is not present in the district."). "The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution," and its "historical purpose has been two-fold: first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment." *Aqua Stoli Shipping Ltd.*, 460 F.3d at 437-438, 2006 WL 2129336, at *2, 2006 U.S. App. LEXIS 19302, at *6-*7. [*9] Accord *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002).

Furthermore, "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("*Supplemental Rule E(4)(f)*"). The Court of Appeals for the Second Circuit has recently, for the first time, [4] spoken "directly on the showing necessary to vacate a maritime attachment under Rule E," *Aqua Stoli Shipping Ltd.*, 460 F.3d at 439, 2006 WL 2129336, at *4, 2006 U.S. App. LEXIS 19302, at *12 - holding that "once a plaintiff has carried his burden to show that his attachment satisfies the requirements of *Supplemental Rule B*, a district court may vacate an attachment only upon [certain] circumstances," which "can occur where 1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant [*10] is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment," id., 460 F.3d at 436, 2006 WL 2129336, at *1, 2006 U.S. App. LEXIS 19302, at *2-*3. [5] The Court of Appeals stated, at greater length:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient [*11] adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

Id., 460 F.3d at 444-445, 2006 WL 2129336, at *9, 2006 U.S. App. LEXIS 19302, at *28-*29 (footnotes omitted). The Court emphasized that "*Rule B* specifies the sum total of what must be shown for a valid maritime attachment." Id., 460 F.3d at 447, 2006 WL 2129336, at *11, 2006 U.S. App. LEXIS 19302, at *35.

4  Because the Court of Appeals' Aqua Stoli decision was issued on July 31, 2006, and this Court asked the parties for some further short letter briefs on a specific point in light of Aqua Sto-

li, this Court's issuance of an order in this action was accordingly delayed.

5   "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." *Aqua Stoli Shipping Ltd.*, 460 F.3d at 445, 2006 WL 2129336, at *11 n.5, 2006 U.S. App. LEXIS 19302, at *30 n.5. However, the Court of Appeals believes that, under these Supplemental Rules, defendant bears the burden of "establish[ing] any equitable grounds for vacatur." *Id.*

[*12] In so holding, the Court of Appeals "reject[ed] the reasoning of the more recent district court decisions that have engaged in a broader Rule E(4)(f) inquiry," *id.*, 460 F.3d at 445, 2006 WL 2129336, at *10, 2006 U.S. App. LEXIS 19302, at *30 -- including those that adopted "a needs test, requiring the plaintiff to show that, even if the defendant cannot be found within the district, the attachment is necessary to obtain jurisdiction over a defendant or to secure a potential judgment," *id.*, 460 F.3d at 446, 2006 WL 2129336, at *10, 2006 U.S. App. LEXIS 19302, at *32 & n.8 (citing *Ullises Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318 (S.D.N.Y. 2006); *T & O Shipping, Ltd. v. Lydia Mar Shipping Co.*, 415 F. Supp. 2d 310 (S.D.N.Y. 2006); *Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co.*, 409 F. Supp. 2d 427 (S.D.N.Y. 2006); *Seaplus Line Co. Ltd. v. Bulkhandling Handymax*, 409 F. Supp. 2d 316, 319-20 (S.D.N.Y. 2005); *Allied Mar., Inc. v. Rice Corp.*, No. 04 Civ. 7029, 2004 WL 2284389, 2004 U.S. Dist. LEXIS 20353 (S.D.N.Y. Oct. 12, 2004)). [6] The Court "also [*13] reject[ed] the approach taken by the district court in *Royal Swan Navigation Co. v. Global Container Lines, Ltd.*, 868 F. Supp. 599 (S.D.N.Y. 1994)," which "would impose a fact-intensive inquiry into the substantiality and nature of a defendant's presence in an adjacent district before deciding whether an attachment should be vacated." *Aqua Stoli Shipping Ltd.*, 460 F.3d at 446-447, 2006 WL 2129336, at *11, 2006 U.S. App. LEXIS 19302, at *34-*35.

6   In vacating the judgment of the district court below, the Court of Appeals also rejected what it characterized as the "needs-plus-balancing test," *Aqua Stoli Shipping Ltd.*, 460 F.3d at 438-439, 2006 WL 2129336, at *4, 2006 U.S. App. LEXIS 19302, at *10, adopted by the district court, under which, even if the plaintiff meets its burden of showing a need for the attachment, a court may vacate the attachment if the defendant shows that "the hardship the attachment order imposes on it or others substantially outweighs any benefit to the plaintiff," *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 384 F. Supp. 2d 726, 729 (S.D.N.Y. 2005).

[*14] The Court of Appeals' holding and rationale in *Aqua Stoli Shipping Ltd.* also strongly undermine the standard, stated in a number of cases, that the hearing pursuant to *Supplemental Rule E(4)(f)* is intended to "'make a preliminary determination whether there were reasonable grounds for issuing the warrant,'" *Ullises Shipping Corp.*, 415 F. Supp. 2d at 322 & n.37 (quoting *Salazar v. "Atlantic Sun"*, 881 F.2d 73, 79-80 (3d Cir. 1989)), or the attachment, see *Ullises Shipping Corp.*, 415 F. Supp. 2d at 323 n.37 (noting that "[t]he standard applies to post-attachment cases as well as post-arrest cases"). "This standard has been defined as 'probable cause' or 'reasonable grounds.'" *Id.* at 323 n.37 (quoting *Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1359 (M.D. Fla. 2001)). Under this standard, in order to justify the maintenance of an attachment under *Supplemental Rule E(4)(f)*, a plaintiff bears a higher burden than that imposed by *Supplemental Rule B*: as a decision adopting this standard states, "although a minimal prima facie showing is sufficient to justify [*15] an attachment under *Rule B*, under *Rule E(4)(f)*, [plaintiff] has the burden of presenting some evidence showing reasonable grounds for the attachment." *Id.* at 325. Although *Aqua Stoli* does not explicitly address this "probable cause" or "reasonable grounds" standard, the decision's emphasis that "*Rule B* specifies the sum total of what must be shown for a valid maritime attachment," *id.*, 460 F.3d at 447, 2006 WL 2129336, at *11, 2006 U.S. App. LEXIS 19302, at *35 -- including a "valid prima facie admiralty claim against the defendant," *id.*, 460 F.3d at 444-445, 2006 WL 2129336, at *9, 2006 U.S. App. LEXIS 19302, at *28 -- implies that the "probable cause" or "reasonable grounds" standard is improper insofar as it purports to go beyond this limited inquiry.

For a plaintiff to show that "it has a valid prima facie admiralty claim against the defendant," *id.*, 460 F.3d at 444-445, 2006 WL 2129336, at *9, 2006 U.S. App. LEXIS 19302, at *28, in the context of maritime attachment, it appears that a plaintiff need not provide anything beyond its Verified Complaint, pursuant to *Supplemental Rules B* and *E*. A court relies only on a plaintiff's complaint [*16] to determine if the plaintiff has shown that it has such a claim against the defendant (and on a plaintiff's affidavit to determine whether it appears that the defendant cannot be found within the district). See *Fed. R. Civ. P. Supp. Rule B(1)* ("The court must review the complaint and affidavit and, if the conditions of this *Rule B* appear to exist, enter an order so stating and authorizing process of attachment and garnishment."); see also *Aqua Stoli Shipping Ltd.*, 460 F.3d at 438, 2006 WL 2129336, at *3, 2006 U.S. App. LEXIS 19302, at *8-*9

("a plaintiff must file a verified complaint praying for an attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district" and "[i]f the plaintiff's filings comply with these conditions, the court must enter an order authorizing the attachment"). Thus, to show that it has a prima facie claim, a plaintiff seeking a maritime attachment need not provide any supporting evidence; its complaint should suffice. [7] Furthermore, Aqua Stoli implies that a plaintiff is likewise not required to provide evidence showing that it has a claim against defendant, [*17] to carry its burden under *Supplemental Rule E(4)(f)*. See *Aqua Stoli Shipping Ltd.*, 460 F.3d at 439, 2006 WL 2129336, at *4, 2006 U.S. App. LEXIS 19302, at *12 (holding that "once a plaintiff has carried his burden to show that his attachment satisfies the requirements of *Supplemental Rule B*, a district court may vacate an attachment only upon [certain] circumstances," which are very limited, as discussed above).

[7] In this sense, the use of the phrase "prima facie claim," in the maritime attachment context, differs from the use of that phrase in other contexts, where it implies an evidentiary standard, see, e.g., *Pittston Coal Group v. Sebben*, 488 U.S. 105, 117, 109 S. Ct. 414, 102 L. Ed. 2d 408 (1988); *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991) - particularly, the context of employment discrimination claims, see *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("The prima facie case [of employment discrimination] under *McDonnell Douglas [Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)]*, however, is an evidentiary standard, not a pleading requirement.") (The phrase "prima facie case" - which "not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue," *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) - is sometimes used interchangeably with "prima facie claim." See, e.g., *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978); *Qi Hang Guo v. United States DOJ*, 422 F.3d 61, 64 (2d Cir. 2005); *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003); *Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 6 (2d Cir. 1999); *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343, 349 (S.D.N.Y. 2001).)

[*18] But the reverse issue is less clear: when a defendant seeks to have an attachment order vacated, may a plaintiff provide and rely on other submissions, beyond the complaint, to show that plaintiff indeed has a prima facie claim against the defendant, if the plaintiff's complaint is not sufficient in and of itself? One recent case suggests that a plaintiff may rely on other submissions to justify the maintenance of an attachment. See *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 530, 2006 WL 2168452, at *10, 2006 U.S. Dist. LEXIS 53395, at *30 (S.D.N.Y. 2006) (noting that "[t]he current motion to vacate [plaintiffs' maritime attachment], however, is not a motion to dismiss; it is a specialized maritime proceeding with the singular purpose of determining the ongoing propriety of a maritime attachment"; further stating that, "[a]ccordingly, the Court's review of whether reasonable grounds exist for the attachment is not limited to allegations in the Complaint"; and concluding that "[t]he totality of Plaintiffs' allegations, including those offered in their opposition briefs, their affidavits, and at the hearing, provide reasonable grounds to [*19] believe that [the movant] was intricately involved in events alleged in the Complaint, whether as [a named defendant] or other individuals identified therein"). That case adopts the "reasonable grounds" standard implicitly rejected by Aqua Stoli. But, as discussed above, Aqua Stoli's implicit rejection of that standard is based on the assumption that the standard places a higher burden on a plaintiff, to show more than what is required by *Supplemental Rule B*; it is not clear that Aqua Stoli implicitly rejects the possibility that a plaintiff could rely on other submissions to bolster its complaint. At least one case, however, suggests that an attachment must be vacated insofar as it pertains to a claim not made in plaintiff's complaint. See *T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.*, 415 F. Supp. 2d 310, 316-17 (S.D.N.Y. 2006) (vacating the attachment insofar as it pertained to security for plaintiff's direct losses, because plaintiff made no claim for direct damages in its complaint, even though plaintiff claimed that the complaint sufficiently alleged direct damages, and plaintiff also pointed to his opposition papers and other submissions). [*20] But this case also adopts an approach explicitly rejected by Aqua Stoli, insofar as it focuses on the need for security as a requirement to maintain the attachment; furthermore, the claim it refers to is not the plaintiff's main claim against the defendant but rather a specific claim for a particular category of relief. These cases, and what Aqua Stoli appears to imply, suggest two possible approaches: first, if a plaintiff's complaint does not, after all, state a prima facie claim in and of itself, the maritime attachment must generally be vacated, because the attachment order should not have been issued under *Supplemental Rule B*, which focuses only on the complaint (and a plaintiff's affidavit for the separate question of

whether the defendant cannot be found in the district); or, second, insofar as the main concern is whether a plaintiff has a "valid prima facie admiralty claim against the defendant," a court must not vacate the attachment on the sole basis that the complaint does not, in and of itself, sufficiently state a prima facie claim, if plaintiff can show that it has such a claim based on a combination of its complaint and any other allegations in other submissions [*21] plaintiff provides at that point. Rather than attempting to set forth a general conclusion, the Court will examine this issue further in the specific context of this case, in the next section.

Independently of whether a plaintiff may rely on allegations in submissions other than the complaint, the Court believes that, for the complaint to show a prima facie claim, the complaint must comply with the relevant federal pleading requirements. Tide Line argues that "Rule E(4)(f) does not afford a defendant the opportunity to challenge the sufficiency of the plaintiff's pleadings." Letter from Tide Line to the Court 1 (Aug. 4, 2006). Tide Line, id. at 5, points to *Maersk, Inc.*, 443 F. Supp. 2d at 530, 2006 WL 2168452, at *10, 2006 U.S. Dist. LEXIS 53395, at *30 (noting the argument, advanced by the movant seeking to vacate the attachment, "that the Complaint does not sufficiently allege any claim against him, much less a maritime claim . . . because it does not plead fraud with particularity as required by *Rule 9(b) of the Federal Rules of Civil Procedure*," but refusing to address this argument because the movant filed a motion to vacate a [*22] maritime attachment order and not a motion to dismiss, and therefore "the Court will not consider such an argument lest *Rule 12(b) (6)* be completely subsumed by *Supplemental Rule E(4)(f)*"). The Court recognizes that a motion to vacate a maritime attachment is different from a motion to dismiss a complaint. But the Court of Appeals recognized, in Aqua Stoli, that "[w]ithout doubt the Rule E(4)(f) hearing provides defendants with an opportunity to argue that the requirements of *Rule B* were not in fact met - for example, that the defendant turned out to be 'found within the district.'" *Aqua Stoli Shipping Ltd.*, 460 F.3d at 438, 2006 WL 2129336, at *3, 2006 U.S. App. LEXIS 19302, at *9. Thus, in seeking to have an attachment vacated, a defendant may argue that a plaintiff does not have a "valid prima facie admiralty claim against the defendant." For the reasons discussed above, it does not appear that the basis of defendant's argument may be that plaintiff has not provided sufficient evidence of such a claim. But it seems that defendant may, under *Supplemental Rule E(4)(f)*, argue that plaintiff's pleadings are themselves insufficient to state such a claim; otherwise, [*23] it is not clear how a defendant could argue that the "prima facie claim" requirement of *Supplemental Rule B* has not actually been met.

Generally, when an action is brought in federal court, a complaint must contain, inter alia, only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). See also *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). (referring to the "bare-bones notice-pleading requirements of *Rule 8(a)*"). "The liberal notice pleading of *Rule 8(a)* is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz*, 534 U.S. at 514. "*Rule 8(a)*'s simplified pleading standard applies to all civil actions, with limited exceptions. *Rule 9(b)*, for example, provides for greater particularity in [*24] all averments of fraud or mistake. [The Supreme] Court, however, has declined to extend such exceptions to other contexts." *Id. at 513*.

*Rule E(2) (a) of the Supplemental Rules for Certain Admiralty and Maritime Claims* ("*Supplemental Rule E(2)(a)*"), however, requires that, in an action in personam with process of maritime attachment and garnishment, a complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *Fed. R. Civ. P. Supp. R. E(2) (a)*. "This standard for the particularity of complaints is more stringent than the pleading requirements of the Federal Rules of Civil Procedure." *United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir. 1989).

B. Analysis

The Court now turns to consider whether Tide Line has adequately shown that: "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found [*25] within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd.*, 460 F.3d at 444-445, 2006 WL 2129336, at *9, 2006 U.S. App. LEXIS 19302, at *28-*29. [8] Defendant has made no showing, nor is there any indication that, this case presents any of the limited circumstances under which the Court of Appeals found, in Aqua Stoli Shipping Ltd., that a court could equitably vacate a maritime attachment.

  8  Transclear does not claim that Tide Line has failed "to meet the filing and service requirements of Rules B and E." *Aqua Stoli Shipping Ltd.*, 460

*F.3d at 444-445, 2006 WL 2129336, at *9, 2006 U.S. App. LEXIS 19302, at *28.*

1. Requirements Other than Prima Facie Claim

The main issue presented here is whether Tide Line has a "prima facie admiralty claim" against Transclear. Tide Line has met the other requirements necessary for the maritime attachment to be maintained: the defendant cannot be found within the district; the defendant's property [*26] may be found within the district; there is no statutory or maritime law bar to the attachment.

The second factor - that Transclear cannot be found within this district - is undisputed. Letter from Transclear to the Court 3 (Aug. 3, 2006).

As for the third factor - that Transclear's property may be found within this district - it is shown by the very fact of the attachment. But Transclear argues that the Court of Appeals' Aqua Stoli decision raises a "serious question as to whom Electronic Funds Transfers ("EFTs") belong while in transit," Letter from Transclear to the Court 3 (Aug. 3, 2006); the funds attached here are EFTs. [9] "Under the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction." *Aqua Stoli Shipping Ltd., 460 F.3d at 436, 2006 WL 2129336, at *1, 2006 U.S. App. LEXIS 19302, at *4* (citing *Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002)*). [10] In Agua Stoli, the Court of Appeals questioned Winter Storm, "especially its reliance on *[United States v.] Daccarett, 6 F.3d [37,] 55 [(2d Cir. 1993)]*, to hold that EFTs [*27] are property of the beneficiary or sender of an EFT." *Aqua Stoli Shipping Ltd., 460 F.3d at 446, 2006 WL 2129336, at *11 n.6, 2006 U.S. App. LEXIS 19302, at *31 n.6.* [11] Nevertheless, the Court of Appeals has not overturned *Winter Storm;* this Court therefore continues to be bound by that decision.

9   EFTs function in the following way:

> When a customer wants to commence an EFT, its bank sends a message to the transfer system's central computer, indicating the amount of money to be transferred, the sending bank, the receiving bank, and the intended beneficiary. The central computer then adjusts the account balances of the sending and receiving banks and generates a printout of a debit ticket at the sending bank and a credit ticket at the receiving bank. After the receiving bank gets the credit ticket, it notifies the beneficiary of the transfer. If the originating bank and the destination bank belong to the same wire transfer system, then they are the only sending and receiving banks, and the transfer can be completed in one transaction. However, if the originating bank and the destination bank are not members of the same wire transfer system, which is often the case with international transfers, it is necessary to transfer the funds by a series of transactions through one or more intermediary banks.

*Aqua Stoli Shipping Ltd., 460 F.3d at 436, 2006 WL 2129336, at *11 n.1, 2006 U.S. App. LEXIS 19302, at *4 n.1* (quoting *United States v. Daccarett, 6 F.3d 37, 43-44 (2d Cir. 1993)*). "Because of the international nature of maritime transactions, intermediary banks are frequently used." Id.

[*28]

10   See also *Aqua Stoli Shipping Ltd., 460 F.3d at 436, 2006 WL 2129336, at *11 n.1, 2006 U.S. App. LEXIS 19302, at *4 n.1* ("*Winter Storm, 310 F.3d at 274-78*, permitted the attachment of funds while those funds are in an intermediary bank temporarily as a credit before being passed through to the beneficiary of the transaction or another intermediary bank.").

11   The Court of Appeals noted, specifically:

> Because Daccarett was a forfeiture case, its holding that EFTs are attachable assets does not answer the more salient question of whose assets they are while in transit. In the absence of a federal rule, we would normally look to state law, which in this case would be the New York codification of the Uniform Commercial Code, *N.Y. U.C.C. Law §§ 4-A-502 to 504.* Under state law, the EFT could not be attached because EFTs are property of neither the sender nor the beneficiary while present in an intermediary bank. Id. *§§ 4-A-502 cmt. 4, 4-A-504 cmt. 1.*

*Aqua Stoli Shipping Ltd., 460 F.3d at 446, 2006 WL 2129336, at \*11 n.6, 2006 U.S. App. LEXIS 19302, at \*31 n.6.*

[\*29] As for the fourth element - whether there is no statutory or maritime law bar to the attachment - Transclear argues that this "presents the most compelling argument for vacating the attachment," Letter from Transclear to the Court 2 (Aug. 3, 2006), but Transclear does not point to an actual statutory or maritime law bar to the attachment: rather, Transclear argues that "Tide Line failed to present evidence to support a finding of alter ego," id. [12] This issue is discussed below in connection with the question of whether Tide Line has shown that it has a "prima facie admiralty claim."

> 12   Although the factor of a "statutory or maritime law bar" is not discussed in Aqua Stoli Shipping Ltd., Transclear's argument pertains to whether or not Tide Line has met its burden of showing that it has a valid maritime claim against Transclear, not to whether there is a proscription to the attachment even if Tide Line has such a claim.

2. Valid Prima Facie Admiralty Claim

As noted earlier, Tide Line's sole allegation [\*30] against Transclear, in its Verified Complaint, [13] is that: "Defendant Transclear acts as paying agent, or arranges for other nonparties to satisfy the debts and obligations of Defendant Eastrade." Compl. P 13. In its submissions opposing Transclear's motion to vacate the attachment, Tide Line argues that it has a valid in personam maritime claim against Transclear, on the sole basis that Transclear is, allegedly, the alter ego of Eastrade Inc., against whom it is undisputed that Tide Line has a valid maritime claim. Pl. Mem. 8-9. Tide Line argues that its Complaint adequately alleges a claim against Transclear based on alter ego liability, and that its other submissions (and its oral argument) in connection with the motion to vacate the attachment further allege and support such an alter ego claim. Pl. Mem. at 10-12. Furthermore, Tide Line asks that, if the Court finds that the Verified Complaint does not adequately allege that Transclear and Eastrade Inc. are alter egos, the Court allow Tide Line to submit an amended complaint containing additional allegations as to Transclear's status as an alter ego of Eastrade Inc., based on new information discovered since the filing of the [\*31] Complaint; Tide Line also requests that the release of the attached funds be stayed until the Complaint is amended and a new writ is served upon the garnishee bank, because Tide Line claims it will suffer great prejudice if the funds are released. Pl. Mem. 11-12; see also Letter from Tide Line to the Court 1-2 (July 11, 2006) (with attached Proposed Amended Verified Complaint); Letter from Tide Line to the Court 2 (July 12, 2006). Transclear argues that Tide Line did not allege, in its Complaint, that Transclear is an alter ego of Eastrade Inc., and Tide Line may therefore not present such a claim at this point, or present evidence in support of it. [14] See Transclear S.A.'s Memorandum of Law in Support of its Motion to Vacate Maritime Attachment and Garnishment ("Def. Mem.") 10, 12; Transclear S.A.'s Reply Memorandum of Law in Further Support of its Motion to Vacate Maritime Attachment ("Def. Reply Mem.") 5-7; Letter from Transclear to the Court 3 (July 12, 2006) (arguing that, "[a]t a Rule E hearing, the court should not consider any legal theories that were not pled in the complaint on which the attachment was based"). [15] Furthermore, Transclear argues that, even [\*32] if the Court does consider Tide Line's alter ego allegations and evidence, Tide Line has failed to prove that Transclear is the alter ego of Eastrade Inc. Def. Reply Mem. 7-9; Letter from Transclear to the Court 2 (Aug. 3, 2006).

> 13   That is, its sole allegation apart from the claim, upon information and belief, that Transclear "was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law, with principal place of business in Nyon, Switzerland." Compl. P 4.

> 14   Transclear does not argue that an admiralty claim, and a related maritime attachment, cannot be based on alter ego liability.

> 15   At oral argument, counsel for Transclear stated that he had not seen Tide Line's motion to amend its complaint, due to a "mix-up in the fax number" which was due to a mistake on the part of Transclear, not Tide Line. See Transcript of July 14 Oral Argument at 43-44. Transclear's counsel added that Transclear "would appreciate the opportunity to respond to that." Id. at 44. To date, Transclear has not submitted any response to Tide Line's request to amend its complaint, and has not made a written request to be able to file such a response.

[\*33]   a. Alter Ego Liability

"The prerequisites for piercing the corporate veil are as clear in federal maritime law as in shoreside law" [16]: the veil will be pierced only if a corporation was used by another entity or individual to "perpetrate a fraud" or was "so dominated" and its corporate form "disregarded" such that it primarily transacted the other entity's or individual's business. *Kirno Hill Corp., 618 F.2d 982, 985 (2d Cir. 1980).* Accord *Matter of Arbitration between Holborn Oil Trading, Ltd. v. Interpol Bermuda Ltd., 774*

*F. Supp. 840, 844 (S.D.N.Y. 1991)* ("Federal common law in the Second Circuit involves a two pronged test for piercing the corporate veil: the party sought to be charged must have used its alter ego 'to perpetrate a fraud or have so dominated and disregarded [its alter ego's] corporate form' that the alter ego was actually carrying on the controlling party's business instead of its own.") (quoting *Kirno Hill Corp., 618 F.2d at 985*); *Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F. Supp. 2d 318, 323 (S.D.N.Y. 2006)* ("Federal common law allows piercing of the corporate veil where (1) a [*34] corporation uses its alter ego to perpetrate a fraud or (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own.") (internal quotation marks omitted). "Under that standard, '. . . [a]ctual domination, rather than the opportunity to exercise control, must be shown.'" *Ullises Shipping Corp., 415 F. Supp. 2d at 323* (quoting *De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996))*.[17]

> 16  "Federal maritime law . . . is the law we apply in an admiralty case." *Kirno Hill, 618 F. 2d at 985.* Cf. Matter of Arbitration between *Holborn Oil Trading Ltd. and Interpol Bermuda Ltd., 774 F.Supp. 840, 844 (S.D.N.Y. 1991)* ("Federal courts sitting in admiralty must apply federal common law when examining corporate identity."); accord *Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F.Supp.2d 318, 323 (S.D.N.Y. 2006).*

> 17  Even sole ownership of a corporation is not sufficient, by itself, to pierce the corporate veil. *Kirno Hill Corp., 618 F.2d at 985.* "Because a principal purpose for organizing a corporation is to permit its owners to limit their liability, there is a presumption of separateness between a corporation and its owners, which is entitled to substantial weight." *American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988).*

[*35] The Court of Appeals for the Second Circuit has enumerated ten factors that would "tend to show that defendant was a dominated corporation," *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991)*:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if [*36] it were its own.

*Id. at 137-39.*[18] "Applying these - or any other pertinent factors -- to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that 'differs with the circumstances of each case.'" Id. (quoting *American Protein, 844 F.2d at 60).*

> 18  This decision addressed New York law concerning piercing the corporate veil. But "the standards for piercing the veil under New York and federal common law . . . converge, requiring a showing of either fraud or domination." Matter of Arbitration between *Holborn Oil Trading Ltd. v. Interpol Bermuda Ltd., 774 F. Supp. at 844.* In that maritime case, the Court looked to the factors set forth in *Wm. Passalacqua Builders, Inc., 933 F.2d at 137-139.*

b. Tide Line's Burden

In their submissions to the Court -- which were filed before the Court of Appeals issued its decision in Aqua Stoli [*37] Shipping Ltd. -- the parties both argued that "[a]t a post-attachment hearing, a plaintiff asserting corporate alter egos need not definitively establish domination and control, but must present enough evidence to convince the court that there are reasonable grounds for piercing the corporate veil," *Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F. Supp. 2d 318, 323 (S.D.N.Y. 2006).* See Pl. Mem. 7, 15 (adopting this standard but citing other cases); Letter from Transclear to the Court 3 (July 12, 2006) (stating this standard but arguing that it applies only if alter ego liability is pled in the complaint). In connection with the motion to vacate the maritime attachment order, the parties provided affirmations and declarations to support their positions as to whether or not there are "reasonable grounds to pierce the corporate veil" here, as to Transclear. See Affirma-

Case 1:07-cv-07101-CM    Document 15-3    Filed 09/04/2007    Page 14 of 18

Page 10
2006 U.S. Dist. LEXIS 95870, *

tion of Tina Elliott (Executive Officer of Transclear) in Support of Motion to Vacate Maritime Attachment ("Elliot Aff."); Reply Affirmation of Tina Elliott in Further Support of Motion to Vacate Maritime Attachment ("Elliott Reply Aff."); Declaration of Nancy R. Peterson (counsel to Tide [*38] Line) in Support of Plaintiff's Opposition to Motion to Vacate Maritime Attachment and in Support of Cross-Motion to Dismiss Counterclaims ("Peterson Decl.") and attached exhibits; Declaration of Kyriakos Linas (director of Tide Line) in Support of Plaintiff Tide Line Inc.'s Opposition to Motion to Vacate the Maritime Attachment; and the Declaration of Vassiliki Sekrou (third-party employee) in Support of Plaintiff's Opposition to Motion to Vacate Maritime Attachment ("Sekrou Decl."). The oral argument that was held pursuant to *Supplemental Rule E(4)(f)* (and before the Court of Appeals' Aqua Stoli decision) also focused primarily on the factual record.

However, as discussed above, the holding and overall rationale of *Aqua Stoli Shipping Ltd., 460 F.3d 434, 2006 WL 2129336, 2006 U.S. App. LEXIS 19302*, imply that the "probable cause" or "reasonable grounds" standard is generally improper when considering whether a maritime attachment must be vacated. Under this logic, the Court should not engage in a broad inquiry into evidence presented as to Transclear's relationship with Eastrade Inc. Rather, the Court must focus on the narrower question of whether Tide Line has shown that [*39] it has a valid prima facie claim against Transclear on the basis of alleged alter ego status. [19]

> 19 Transclear argues that the Court of Appeals' decision in Aqua Stoli "has absolutely no bearing on the standard of proof regarding Tide Line's belated alter ego allegations because: (i) there were no alter ego allegations at issue in Aqua Stoli, and (ii) the Second Circuit in Aqua Stoli did not address or modify the longstanding Second Circuit authority as to what needs to be proven to show alter ego liability and pierce the corporate veil." Letter from Transclear to the Court 1-2 (Aug. 3, 2006). The Court finds this argument unconvincing: although Aqua Stoli did not involve an alter ego claim, and certainly did not address the factors that tend to show alter ego liability, Aqua Stoli does, for the reasons already discussed, have ramifications as to a plaintiff's burden to maintain an attachment -- including when plaintiff asserts that it has a maritime claim against the defendant based on alter ego liability; there is no reason why, for such a claim, plaintiff would be held to a "probable cause" or "reasonable grounds" standard rather than the "prima facie" requirement emphasized by the Court of Appeals in Aqua Stoli. Similarly, therefore, Transclear's assertion that, although Tide Line has an admiralty claim against Eastrade, Inc., it does not have a claim against Transclear "absent a finding of alter ego" or a "prior determination that Transclear is the alter ego of Eastrade, Inc.," Letter from Transclear to the Court 1 (Aug. 3, 2006), is incorrect. Such a "finding" or "prior determination" is not a prerequisite to maintaining the attachment.

[*40] c. Whether Tide Line Has Met this Burden

Tide Line argues that its Verified Complaint sufficiently alleges that Eastrade Inc. and Transclear are alter egos because "[f]ederal pleading requirements are very liberal," Pl. Mem. at 10, [20] there are "no magic words to allege alter ego," id. at 11, and "[p]aying the debts of another 'independent' company or arranging for others to pay another 'independent' company's debts is one of the main hallmarks of alter ego status," id. Tide Line further states that when it filed the Verified Complaint, it was trying to be "cautious" and to allege only those elements regarding Transclear that it could verify at that time. Id. at 11-12. In response to the Court's Order of July 11, 2006, directing the parties to provide, inter alia, a definition of "paying agent," and analysis of the legal implications to be drawn from such an allegation, Tide Line states that the term "paying agent" "is not specifically defined by statute" [21]; Tide Line offers the definition of "making payments or guaranteeing the debts of the dominated corporation," and argues that its use of the term was intended to refer to aspects of "alter ego" status (including [*41] factors 7 through 10 discussed above); Tide Line therefore claims that the "legal consequences of being a 'paying agent' as defined [here] is [sic] that there are reasonable grounds to find that an entity is in an alter ego relationship." Letter from Tide Line to the Court 1-2 (July 12, 2006). Tide Line thus restates its argument that the allegation in its Complaint was intended to refer to alter ego liability. Transclear responds that "Tide Line could and should have said 'alter ego,' or 'control' or 'domination,' the hallmarks of [alter ego] theory," Def. Reply Mem. 6; Transclear contends that it understood the phrase "paying agent," in the context in which it was used, "to mean an entity that acts as the 'treasurer' or agent of another entity, with the agent issuing payments for the principal out of funds provided by the principal," Letter from Transclear to the Court 1 (July 12, 2006).

> 20 Tide Line refers only to *Fed. R. Civ. P. 8(a)(2)*, and does not address *Supplemental Rule E(2)(a)*. Transclear does not address the question of what pleading rule applies here.

[*42]

21   Transclear likewise responds that, insofar as it is aware, "paying agent" does not have a technical or specialized meaning and is not a term of art. Letter from Transclear to the Court 1 (July 12, 2006).

The Court finds that Tide Line's Verified Complaint does not, in and of itself, state a prima facie maritime claim against Transclear on the basis of alter ego liability. First, and most obviously, Tide Line does not use the phrase "alter ego" in its Verified Complaint. [22] Furthermore, although a court may find that, where "alter ego" "is not specifically pled, the factual allegations [in a complaint] may support the maintenance of a claim based on an alter ego theory of liability," *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 899 (S.D.N.Y. 1999), the sole allegation that an entity is a "paying agent, or arranges for other non-parties to satisfy the debts and obligations of" another entity, does not suffice to allege a prima facie claim of alter ego liability. This statement does not meet the more particularized pleading standard set forth in *Supplemental Rule* [*43] *E(2)(a)* -- nor even, arguably, the more liberal standard of *Rule 8(a)*, see *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (stating that "conclusory" allegations regarding veil-piercing "fail to satisfy even the more lenient *Rule 8(a)* pleading requirements").

22   Cf. *Tramp Oil & Marine, Ltd. v. Ocean Navigation (Hellas)*, No. 03 Civ. 5265, 2004 WL 1040701, at *2, 2004 U.S. Dist. LEXIS 7974, at *3 (S.D.N.Y. May 7, 2004) (finding that order of attachment should not be vacated because plaintiff had a prima facie in personam claim against defendant, insofar as plaintiff alleged that the defendant was jointly and severally liable as a partner of another defendant). In that case, which Tide Line cites, see Pl. Mem. 7, it appears that the plaintiff specifically alleged, in the complaint, that the defendant seeking to vacate the attachment was a partner of the other defendant.

However, Tide Line has provided further allegations (and evidence) pertaining to [*44] its claim that Transclear is the alter ego of Eastrade Inc. in its submissions in connection with the motion to vacate the attachment. In addition, Tide Line asks that the Court allow Tide Line to submit an amended complaint containing these additional allegations as to Transclear's status as an alter ego of Eastrade Inc. [23] - including that: "Upon information and belief, Eastrade Commodities Inc. is merely a shell-corporation through which Transclear conducts its business," Proposed Amended Verified Complaint (attached to Tide Line's letter to the Court dated July 11, 2006) P 13; "Transclear operates Eastrade Commodities Inc. as its 'chartering arm,' such that Eastrade has no separate, independent identity from Transclear," id. P 14; "Furthermore, Transclear is the alter ego of Eastrade Commodities Inc. because Transclear dominates and disregards Eastrade Commodities Inc. corporate form to the extent that Transclear is actually carrying on Eastrade Commodities Inc. business and operations as if the same were its own," id. P 15; "Upon information and belief, Eastrade Commodities, Inc. has no corporate existence of its own. Eastrade Commodities Inc. has no identifiable assets, [*45] employees or office in Panama," id. P 18; "Upon information and belief, Transclear makes payments on Eastrade Commodities, Inc.'s behalf where Transclear has absolutely no contractual obligation to Eastrade Commodities Inc.'s creditors; on March 11, 2005, Transclear made a hire payment to Tide Line on behalf of Eastrade Commodities Inc. even though Transclear was not referenced in the charter party, and no evidence of an indemnification agreement has been produced," id. P 21; "In another, independent maritime attachment case against Eastrade, Transclear was caught paying Eastrade Commodities Inc.'s debts once again," id. P 23; "The only person to respond to the Notice of Attachment was Ms. Tina Elliott, who indicated, on the actual facsimile sent to *Eastrade Commodities Inc.*, and [sic] that she spoke on Eastrade Commodities Inc.'s behalf," id.; "No representative of Eastrade Commodities Inc., beside Ms. Elliott, has come forward to challenge the attachment of Eastrade Commodities Inc.'s funds. Furthermore, no employee of Eastrade Commodities Inc. can be located or identified," id. P 24; "In addition, even though Transclear had no formal relationship to [*46] the LEVANTES A charter, and Eastrade Commodities Inc. was the named charterer, almost all correspondence sent to Tide Line and the charter brokers from the 'charterers' originated from Transclear," id. P 26; and "Transclear performs corporate functions on Eastrade Commodities Inc.'s behalf which should be performed solely by Eastrade Commodities Inc. Transclear appointed an arbitrator on Eastrade Commodities Inc.'s behalf in a 2001 arbitration in which Transclear itself *was not a party*," id. P 27. [24] With these proposed amended allegations, Tide Line has shown that it has a prima facie claim against Transclear on the basis of alleged alter ego status. [25]

23   Although Tide Line has not made this request through a formal motion to amend pursuant to *Federal Rules of Civil Procedure 15(a)*, the Court will consider the request.

24   The Proposed Amended Complaint also advances three alternative claims - that Transclear and Eastrade Commodities Inc. are "partners and/or are joint venturers," id. P 28, or that

they are "affiliated companies" such that one is or soon will be holding assets belonging to the other, id. P 29, or that "Transclear is an undisclosed or partially disclosed principal in the charter parties entered into by Eastrade Commodities Inc., such that Transclear is liable for Eastrade Commodities Inc.'s debts related to those transactions," id. P 30.

[*47]
25   To re-emphasize, the Court must not decide, at this point, whether Tide Line has advanced sufficient evidence to support this claim, or whether Transclear has rebutted such evidence through its own submissions. Nor must it decide, for reasons discussed at length above, whether Tide Line has shown "probable cause" to believe that Transclear is the alter ego of Eastrade Commodities Inc.

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Fed. R. Civ. P. 15(a)*. *Rule 15(a)* has a "lenient standard." *Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)*. "The Second Circuit has held that a *Rule 15(a)* motion 'should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603-04 (2d Cir. 2005)* [*48] (quoting *Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987)*). Although it is true that Tide Line could have brought a motion to amend earlier, the Court does not find that Tide Line's timing rises to "undue delay" in this case. Furthermore, the Court does not find that any of the other factors that would counsel against allowing the amendment are present here. The Court will therefore grant Tide Line's request to amend its Complaint, so long as no objections are filed by Transclear by August 23, 2006.

The question at this point is whether the Ex Parte Attachment Order should be vacated because the original Verified Complaint does not sufficiently state a prima facie alter ego claim against Transclear, or whether it should not be vacated because Tide Line's proposed amended allegations sufficiently state a prima facie alter ego claim against Transclear; furthermore, if the Attachment Order is vacated, the Court must consider whether the release of the attached funds should be stayed, as requested by Tide Line, until the Complaint is amended, a new Ex Parte Attachment Order is issued, and a new writ is served upon the garnishee [*49] bank.

If the Court were to vacate the attachment now, after granting Tide Line's request to amend its Complaint, the entire proceedings would almost certainly be quickly repeated. [26] It seems that the interests of judicial efficiency would counsel in favor of keeping the attachment in place, in light of the amendments to the Verified Complaint. The parties have not provided any case law specifically addressing whether or not such a procedure may be adopted, and the Court has not found cases on point. [27] But, insofar as Tide Line has shown that it has a prima facie claim against Transclear on the basis of its Proposed Amended Verified Complaint, the Court does not believe that the purposes of *Supplemental Rules B and E* would be served by vacating the Attachment Order as to Transclear. However, the most appropriate procedure to follow appears to be the following: The Court will vacate the Ex Parte Attachment Order, allow Tide Line to file its Amended Verified Complaint with a new request for an Attachment Order by August 25, 2006 (so long as no objections are filed by August 23, 2006), and stay the release of the funds pending the issuance of the new Attachment Order and the serving [*50] of a new writ of attachment on the bank, so long as such service is accomplished by August 30, 2006.

26   Indeed, Tide Line's counsel confirmed as much during the hearing. Transcript of Oral Argument Heard on July 14, 2006 ("Tr.") 42, 47.

27   Transclear points to *T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F. Supp. 2d 310, 317 (S.D.N.Y. 2006)*, in which, as discussed earlier, the Court vacated the attachment insofar as it pertained to security for plaintiff's direct losses, because plaintiff made no claim for direct damages in its complaint. In that case, however, the plaintiff had apparently not made a request to amend its complaint in that case. The Court, after vacating the attachment order, stated that if plaintiff intended to filed an amended complaint, it could do so within twenty days. *Id. at 317*. Here, Tide Line has already requested that it be allowed to filed an amended complaint, and the Court has granted leave to amend.

Tide Line cites *Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 899*, which states that even if an allegation of alter ego "is not specifically pled, the factual allegations contained in the Second Amended Complaint may support the maintenance of a claim based on an alter ego theory of liability." But this is not a maritime case, and does not involve a maritime attachment; therefore, it does not provide any guidance as to whether an attachment may be maintained on the basis of a subsequent amended complaint.

[*51]   d. Note on Transclear and Arbitration

The Court notes, however, that there appears to be a larger issue concerning Tide Line's claim against Transclear -- which, although it does not in and of itself require that the attachment be vacated, poses a problem for the unfolding of this action.

The Federal Arbitration Act ("FAA") applies to arbitration provisions in "maritime transactions." *9 U.S.C. §§ 1, 2*. Section 8 of the FAA, *9 U.S.C. § 8* - invoked by Tide Line in its Verified Complaint in seeking the maritime attachment order (along with *Section 1* of the FAA and *Supplemental Rule B*) - provides:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

"Under *§ 8*, the plaintiff [*52] may seize the ship in rem, obtain a bond, and proceed with arbitration," *Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 107 (2d Cir. 2002)* - or, similarly, may attach other property belonging to the defendant, and proceed to arbitration.

Here, however, Tide Line is not seeking to proceed to arbitration as against Transclear. Despite the claim in Tide Line's Complaint that it sought a maritime order "for the purpose of obtaining personal jurisdiction over the Defendants, compelling them to arbitrate the claims asserted by Tide Line," Compl. P 15 (emphasis added), Tide Line has not sought, and apparently does not intend to seek, to join Transclear to the arbitration proceedings that Tide Line has initiated against Eastrade Inc. Tide Line's Verified Complaint refers to initiating arbitration only as against Eastrade Inc. Compl. P 9. Furthermore, Tide Line's submissions to the Court in connection with Transclear's motion to vacate the attachment nowhere state that Tide Line has attempted, or will seek, to involve Transclear in the arbitration proceedings.

It is not clear why Tide Line has not named Transclear in the arbitration proceedings. At the [*53] post-attachment hearing, when questioned by the Court regarding why Transclear is not involved in the arbitration proceeding, if Tide Line claims that Transclear is the alleged alter ego of Eastrade Inc., counsel for Tide Line stated that, although "that would be better answered by the London solicitor," he presumed that Transclear was not named in the arbitration proceeding because "arbitration is by contract" and "the only two parties named in the contract [at issue here] were Tide Line Inc. and Eastrade Commodities, Inc." Tr. 25. In response to the Court's suggestion that an alter ego could nonetheless be brought in, Tide Line's counsel replied: "In London arbitration, I don't expect that anybody would have allowed Transclear to come in when they claimed they're not a party to the contract. That's why we have Transclear here in New York." Id.

Tide Line has not sought to have this Court compel Transclear to participate in the arbitration proceedings; therefore, the Court need not decide whether Transclear could be so compelled. [28] But the Court notes that the Court of Appeals for the Second Circuit "has recognized a number of theories under which nonsignatories may be bound [*54] to the arbitration agreements of others," including that of "veil-piercing/alter ego." *Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)*; accord *Sarhank Group v. Oracle Corp., 404 F.3d 657, 662 (2d Cir. 2005)*. It is possible that, in this case, English law applies under the arbitration agreement, and would bar compelling Transclear to appear in the arbitration. But, again, this need not be resolved here.

> 28  "Under the [Federal Arbitration Act], as interpreted by the Supreme Court, the general presumption is that the issue of arbitrability should be resolved by the courts." *Alliance Bernstein Inv. Research & Mgmt., 445 F.3d 121, 125* (citing *First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)*; *AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986))*; accord *Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005)*.

[*55] Even if Transclear cannot be compelled to join in the arbitration proceedings against Eastrade Inc., Tide Line has provided no support for its position that it may, instead, litigate against Transclear in this Court, see Letter from Tide Line to the Court at 4 (July 11, 2006), on the basis of an alter ego theory, as the arbitration proceeds against Eastrade Inc. Indeed, nothing in the framework set out by *Sections 1* and *8* of the FAA, and *Supplemental Rule B*, suggests that a plaintiff may attach a defendant's property, and litigate the liability of the defendant in federal court, rather than proceeding to arbitration. Although this does not suggest that Tide Line does not have a prima facie claim against Transclear, it

does indicate that, at this point, it is unclear how Tide Line may proceed with that claim in this Court. This will need to be addressed further.

IV. Conclusion

For the reasons given above, the Court grants Defendant Transclear, S.A.'s motion to vacate this Court's March 14, 2006, Ex Parte Order for Process of Maritime Attachment, as to Transclear only, grants Tide Line's request for leave to file an Amended Verified Complaint with a new request [*56] for an Attachment Order so long as no objections are filed by August 23, 2006, directs that Tide Line file the Amended Verified Complaint with a new request for an Attachment Order by August 25, 2006, and stays the release of the attached funds pending the issuance of a new Attachment Order in connection with the Amended Verified Complaint and the serving of a new writ of attachment on the bank, so long as the writ of attachment is served by August 30, 2006.

SO ORDERED.

Dated: New York, New York

August 15, 2006

Kimba M. Wood

United States District Judge