CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Defendant,
Agrocorp International Pte. Ltd.
366 Main Street
Port Washington, New York 110050
Telephone:    516-767-3600
Telefax:        516-767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

PRESTIGIOUS SHIPPING CO. LTD.,            :
                                          :
                                          :
                                          :
                    Plaintiff,            :         07 CV 7101 (CM)
                                          :
                                          :
        - against -                       :
                                          :
                                          :
                                          :
AGROCORP INTERNATIONAL PTE. LTD.,         :
                                          :
                                          :
                    Defendant.            :
-------------------------------------------------------------x


**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT AGROCORP'S MOTION
FOR COUNTER-SECURITY PURSUANT TO SUPPLEMENTAL RULE E(7)**

## TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………….....………....…ii

TABLE OF AUTHORITIES ……………………….…………….....................iii

PRELIMINARY STATEMENT...…………………..……………....……………1

STATEMENT OF FACTS...….……………………………...................................2

LEGAL ARGUMENT…………………………………….....................................3

      I.      THE STANDARD FOR COUNTER-SECURITY…………………….3

      II.     DEFENDANT AGROCORP IS ENTITLED TO COUNTER-
           SECURITY, AND, THEREFORE, THE HONORABLE COURT
           SHOULD DIRECT THE PLAINTIFF PRESTIGIOUS TO POST
           COUNTER-SECURITY……………………………………………..4

           A.    The Claims and counterclaims arise out of the same
                 transaction……………………………………………………4

           B.    Defendant's counterclaims are not frivolous……………………6

           C.    Requiring counter-security will not prevent the Plaintiff from
                 bringing suit……………………………………………………7

      III.    DEFENDANT AGROCORP IS ENTITLED TO THE FULL
           AMOUNT OF $2,302,946.76 AS COUNTER-SECURITY
           FOR ITS COUNTERCLAIMS……………………………………..8

      IV.    AGROCORP'S ATTACHED FUNDS SHOULD BE RELEASED
           AND THE ATTACHMENT VACATED IN THE EVENT
           THAT PRESTIGIOUS DOES NOT PROVIDE COUNTER-
           SECURITY……………………………………………………10

CONCLUSION …………………………………...............................................11

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

Afram Lines International, Inc. v. M/V Capetan Yiannis,
        905 F.2d 347 (11th Cir. 1990)………………………………………………….3

Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A.,
        2007 U.S. Dist. LEXIS 18827 (S.D.N.Y. Feb. 26, 2007)…………………………10

Continental Shipping, Ltd. v. Telfair Int'l Corp.,
        1990 U.S. Dist. LEXIS 11549 (S.D.N.Y. Sept. 4, 1990)……………………………4

Finecom Shipping Ltd. v. Multi Trade Enterprises AG,
        2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. October 24, 2005)………………......6

Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc.,
        56 F.3d 394 (2nd Cir. 1995)…………………………………………………….4, 6, 7

Seaboard & Caribbena Transp. Corp. v. Hafen-Dampschiffart,
        329 F.2d 538 (5th Cir. 1964)……………………………………………………….7

Starboard Venture Shipping, Inc. v. Casinomar Transportation, Inc.,
        1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993)…………………………6

Titan Navigation, Inc. v. Timsco, Inc.,
        808 F.2d 400 (5th Cir. 1987)………………………………………………..3, 4, 7, 8, 11

Transportes Carigbe, S.A. v. M/V Feder Trader,
        860 F.2d 637 (5th Cir. 1988)………………………………………………...4

Verton Navigation, Inc. v. Caribica Shipping Ltd.,
        1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. May 1, 1991)…………………………4, 9

Verton Navigation, Inc. v. Caribica Shipping, Ltd.,
        1992 U.S. Dist. LEXIS 517 (S.D.N.Y. Jan. 2, 1992)…………………………....10

Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,
        263 U.S. 629, 68 L. Ed. 480, 44 S. Ct. 220 (1924)………………………3, 4, 8, 10

**STATUTES and RULES**

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims and
Asset Forfeiture Actions,
    Rule B....................................................................................................................1, 9

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims and
Asset Forfeiture Actions,
Rule E(7)...........................................................................................................1, 3, 4, 6, 8

**OTHER AUTHORITIES**

7A James W. Moore et al.,
    MOORE'S FEDERAL PRACTICE P E.15, at E-756 (2d ed. 1995)........................3

7A J. Moore & A. Pelaez,
    MOORE'S FEDERAL PRACTICE § (E.15) at E-737 (2d Ed. 1988)...................8, 9

## PRELIMINARY STATEMENT

Defendant, AGROCORP INTERNATIONAL PTE. LTD., (hereinafter "Agrocorp"), by and through its undersigned counsel, CHALOS, O'CONNOR & DUFFY, LLP, respectfully submits this Memorandum of Law in Support of Defendant's Motion for Counter-Security pursuant to Rule E(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereinafter "Rule E(7)").

The Plaintiff Prestigious Shipping Co., Ltd. (hereinafter "Prestitgious") is pursuing bogus and unfounded claims against the Defendant Agrocorp in London arbitration, and it has since been able to obtain security for those spurious claims with resort to the U.S. courts and the employment of the Rule B Maritime Attachment Procedure. As more fully set forth in the accompanying Attorney's Affidavit of Owen F. Duffy, the plaintiff's claims are spurious because, whereas the plaintiff claims for delay at the Port of Chittagong, the facts of the matter are that: (1) the plaintiff's vessel was not fit to carry a cargo sugar; (2) the cargo carried on the M/V PRESTIGIOUS was damaged due to the entry of seawater in, at least, two of the cargo holds; (3) the subsequent delays at the Port of Chittagong were a direct and proximate result of the vessel's unseaworthiness; (4) the Plaintiff Prestigious had already paid settlement amounts to the cargo receivers and, yet, the Plaintiff Prestigious is now turning common sense on its head with the pursuit of the claim against Agrocorp as if Agrocorp was responsible for the damage to the cargo and the delays at Chittagong. The claim is absurd.

Insofar as the Plaintiff Prestigious is moving forward in London arbitration and now has full security for its claims against Agrocorp, the Defendant Agrocorp finds itself with no position left but to defend against the claims of Plaintiff Prestigious and present its

1

own counterclaims, as set forth in its Amended Answer herein. Moreover, and because the Plaintiff has been able to obtain full security for its phony claims, the Defendant Agrocorp now requests counter-security for its own counterclaims against Prestigious. Agrocorp's claims arise out of the same transaction as the original claim of Plaintiff Prestigious, they are not frivolous, and requiring Prestigious to provide security does not bar the plaintiff from pursuing its claim in this or any other forum, including the presently proceeding arbitration in London.

Counter-security is, at its base, an equitable remedy which places parties on equal footing. To ensure equity, counter-security should be granted in either the full amount requested, or at least an amount equal to that already attached by the plaintiffs.

## STATEMENT OF FACTS

The facts pertaining to the instant Motion for Counter Security are more fully set forth in the accompanying Attorney's Affidavit of Owen F. Duffy, dated October 4, 2007. Rather than restate the facts fully herein, this Memorandum of Law in Support of Defendant's Motion for Counter-Security will make reference to, and will discuss as appropriate, the facts set forth the accompanying Attorney's Affidavit.  Citation to the Attorney's Affidavit will refer to "Duffy Affidavit at ¶ -."

## LEGAL ARGUMENT

### POINT I

### THE STANDARD FOR COUNTER-SECURITY

The concept of counter-security is found in the first promulgation of the rules in American admiralty courts, and it continues today with little substantive change in Supplemental Rule E(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See,* Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400, 402 (5th Cir. 1987). Supplemental Rule E(7) provides in relevant part:

> Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or [counter-]claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct . . . .

The final clause of the quoted language makes clear that the trial court possesses discretion in deciding whether to order counter-security. *See,* Afram Lines International, Inc. v. M/V Capetan Yiannis, 905 F.2d 347, 349 (11th Cir. 1990); Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400, 403 (5th Cir. 1987); 7A James W. Moore et al., MOORE'S FEDERAL PRACTICE P E.15, at E-756 (2d ed. 1995).

In exercising this discretion, the district court should be guided primarily by two principles, which sometimes conflict with one another. On the one hand, the purpose of Rule E(7) is "'to place the parties on an equality as regards security,'" Titan Navigation, 808 F.2d at 403 (*quoting* Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 638-39, 68 L. Ed. 480, 44 S. Ct. 220 (1924)),

3

which usually favors granting counter-security when a defendant whose property has been

attached asserts non-frivolous counterclaims growing out of the same transaction,

especially when the counterclaimant could have proceeded *in rem* or *quasi in rem* in an

independent suit. Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc., 56 F.3d 394,

399 (2nd Cir. 1995). As was stated by Judge Mukasey when he was a member of this

Court, "[t]he purpose [of Rule E(7)] is to force litigants to 'put their money where their

mouth is,' so to speak." Continental Shipping, Ltd. v. Telfair Int'l Corp., 1990 U.S. Dist.

LEXIS 11549 (S.D.N.Y. Sept. 4, 1990). On the other hand, the Rule is not intended to

impose burdensome costs on a plaintiff that might prevent it from bringing suit. Result

Shipping, *citing to*, Titan Navigation, 808 F.2d at 403-05 and Washington-Southern, 263

U.S. at 632-36 (construing the predecessor to Rule E(7) under old Admiralty Rules).


## POINT II

### DEFENDANT AGROCORP IS ENTITLED TO COUNTER-SECURITY, AND, THEREFORE, THE HONORABLE COURT SHOULD DIRECT THE PLAINTIFF PRESTIGIOUS TO POST COUNTER-SECURITY

#### A. The Claims and counterclaims arise out of the same transaction

It is axiomatic that claims and counterclaims between vessel owners and charterers

arising out of a vessel charter are considered "arising out of the same transaction" for

purposes of Supplemental Rule E(7). Verton Navigation, Inc. v. Caribica Shipping Ltd.,

no. 90 Civ. 6940, 1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. May 1, 1991); Transportes

Carigbe, S.A. v. M/V Feder Trader, 860 F.2d 637 (5th Cir. 1988).

In the present matter, the Plaintiff Prestigious' claim stems from a charter party

between the parties entered into on February 21, 2005 for the carriage of a cargo of sugar

4

from Brazil to Bangladesh. *See*, Duffy Affidavit at ¶ 11 and Exhibit 1, thereto, Verified

Complaint at ¶¶ 4 and 5. Plaintiff Prestigious alleges that Defendant Agrocorp breached

the charter party by failing to pay demurrage and for damages from an alleged failure to

procure discharge of the vessel the M/V PRETIGIOUS's entire cargo. *See*, Duffy

Affidavit at ¶ 15 and Exhibit 1, thereto, Verified Complaint at ¶ 9. For its part, Defendant

Agrocorp admits that there was a charter party between the parties entered into on

February 21, 2005 for the carriage of a cargo of sugar from Brazil to Bangladesh. *See*,

Duffy Affidavit at ¶ 11 and Exhibit 12, thereto, Amended Answer and Counterclaims at ¶¶

4 and 5. However, as set forth in the pleadings, Defendant Agrocorp denies any liability to

Plaintiff Prestigious and, instead, counterclaims that it was Plaintiff Prestigious which

breached the charter party by failing to deliver the cargo of sugar in the same good order

and condition as it was in when shipped. *See*, Duffy Affidavit at ¶ 15 and ¶s 38 to 48 and

Exhibit 12, thereto, Amended Answer and Counterclaims at ¶ 37. Defendant Agrocorp

also alleges other damages resulting from Plaintiff Prestigious' breaches of the charter

party. *See*, id. at ¶ 38. Moreover, the parties are currently participating in ongoing

arbitration in London, which, pursuant to the charter party, will address the merits of the

competing claims and resolve all claims between the parties arising out of the charter

party. *See*, Duffy Affidavit at ¶s 17 to 19. The counterclaims alleged by Defendant

Agrocorp in the case at hand parallel those in its "amended Points of Defence and

Counterclaim" in the London arbitration. *See*, Duffy Affidavit at ¶ 37. Because of the

temporal proximity of the competing claims, the fact that the competing claims arose from

the same agreement between the parties to this action, and the relation of the competing

claims to one another, this Court should find that the counterclaim arises out of the same transaction as the allegations in the Verified Complaint in this matter.


### B. Defendant's counterclaims are not frivolous

While Rule E(7) contains mandatory language, the trial courts possess "broad discretion in deciding whether to order counter-security." Result Shipping Co v. Ferruzzi Trading USA Inc., 56 F.3d 394, 399 (2d. Cir. 1995). One area where the court may exercise this discretion is the determination of the frivolity of a counterclaim. "The premise that counter-security will not be required on the basis of frivolous counterclaims is a sound one." Starboard Venture Shipping, Inc. v. Casinomar Transportation, Inc., 1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993).

Conversely, a court's ability to understand the merits of a particular dispute, especially early in a proceeding is "limited, and courts should be reluctant to prejudge the merits of claims based entirely on the pleadings and a sparse record consisting of a few documents, in advance of any discovery." Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. October 24, 2005). An inability to understand the merits at an early stage is extenuated when "the ultimate merits will be decided not by this Court," but by another foreign judicial body. Id. at *4-*5 (the final decision in Finecom rested with foreign arbitration panel's determination of the facts so the court was unable to determine the alleged frivolousness of defendant's counterclaims and granted counter-security).

The claims and counterclaims in the present matter stem from a charter party between Prestigious and Agrocorp. Breach of a maritime contract is actionable, and clear

instances of breach exist from the actions of Prestigious are alleged in the Defendant's Verified Answer with Affirmative Defenses and Counterclaims.[1]  Plaintiff Prestigious admits that the underlying claim(s) in this matter will be resolved in the present arbitration proceedings in London and both parties are participating in that arbitration. *See*, Duffy Affidavit at ¶ 13. Based upon these factual disputes, which are to be resolved by the contractually-agreed upon London Arbitration Panel, the counterclaims presented by the Defendant Agrocorp cannot be considered to be frivolous.

Simply put, this Court has accepted Plaintiff Prestigious' claims at face value on an *ex parte* application and issued Process of Maritime Attachment that permitted the plaintiff to restrain the funds of Defendant Agrocorp before the merits of Prestigious' claims are considered, *see* Duffy Affidavit at ¶s 24 & 25, and, therefore, the Court must accept the Defendant Agrocorp's claims pursuant to the same standard and direct Plaintiff Prestigious to provide counter-security.

### C. *Requiring counter-security will not prevent the Plaintiff from bringing suit*

Before allowing claims for counter-security, courts must be wary of the burden placed on the Plaintiff, and take care to ensure the counter-security claim will not "prevent [Plaintiff] from bringing suit." *See*, Result Shipping, 56 F.3d at 400.  However, financial difficulties do not automatically excuse the countersecurity requirement. *See*, Titan Navigation, 808 F.2d at 404, *citing* Seaboard & Caribbena Transp. Corp. v. Hafen-Dampschiffart, 329 F.2d 538 (5th Cir. 1964).  In the case at hand, there is no credible

---

[1] *See*, Affidavit of Duffy at ¶ 15 and Exhibit 12, thereto, Defendant Agrocorp's Verified Answer with Affirmative Defenses and Counterclaim.

argument to be made that Plaintiff Prestigious is any less able to post security than is the Defendant Agrocorp.

In any event, the Plaintiff Prestigious instituted the arbitration proceeding in London on March 23, 2007. *See*, Duffy Affidavit at ¶ 17. This was well before the Plaintiff initiated its efforts to obtain security in this jurisdiction on August 9, 2007 and, therefore, the point undercuts any argument that the underlying arbitration in London could, or will, not proceed apace whether or not this action in the Southern District of New York for security and/or counter-security continues. Therefore, requiring the Plaintiff Prestigious to post counter-security will not impose any burden on Plaintiff Prestigious because its claims will be heard in London Arbitration in a meaningful way whether or not it decides to post counter-security in the Southern District of New York.

## POINT III

### DEFENDANT AGROCORP IS ENTITLED TO THE FULL AMOUNT OF US$2,302,946.76 AS COUNTER-SECURITY FOR ITS COUNTERCLAIMS

It has been stated countless times that one of the main purposes of Rule E(7) is "to place the parties on an equality as regards to security." Titan Navigation, 808 F.2d at 403 (quoting Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 638-639 (1924). While some courts have limited the amount of security for counterclaims to the amount posted by the original defendant, this Court should follow the approach once advanced in MOORE'S FEDERAL PRACTICE, which stated:

> A holding [precluding imposition of a larger bond on the counterclaim than that which was required of the original defendant]…would serve only to encourage sham suits and races to the court house. Suppose, by way of illustration that two vessels collide and one suffers only minor damage and the other sustains very severe damage. If the owner of the slightly

damaged vessel commences an action in rem against the severely damaged vessel a relatively small bond will be required by the owner of the severely damaged vessel. If the owner of the latter vessel is compelled to assert is much larger claim in the same action, it might be grossly unfair to limit the security for his claim to the amount of the bond he had to provide, since had he first commenced his action he could have compelled the posting of a bond large enough to compensate for the severe damages he alleges. In such a case, it might well be "just and reasonable" and more in keeping with the purposes of the rule providing for security on counterclaims to require that the original plaintiff post a larger bond to protect against the counterclaim than the original defendant had to post to protect against the original action. If courts are not alert to such facts, it might encourage the filing of sham suits by parties who know they are potential targets for large in rem actions. Similarly, a flat rule providing that security on counterclaims cannot exceed the amount of the original defendant's bond would encourage races to the courthouse by the least injured of the parties sustaining damages in a maritime occurrence.

7A J. Moore & A. Pelaez, MOORE'S FEDERAL PRACTICE § (E.15) at E-737 (2d Ed. 1988).

This is a well-reasoned approach, particularly in light of the fact that Defendant Agrocorp could have proceeded with its claims *quasi rem* in the Southern District of New York as well, but that Plaintiff Prestigious "won the race to the courthouse door."

Additionally, this court has previously awarded Defendants the full amount sought in an action for counter-security. *See*, Verton Navigation, *supra*. The placement of parties in equal standing merits the assurance that a full claim is secured, rather than what may amount to a small percentage of the overall claim. In the present matter, Prestigious has currently secured $ 753,532.09 through a Rule B attachment. *See*, Duffy Affidavit at ¶ 28. To be fully secured in its counterclaim and placed on equal footing, Agrocorp asks this court to grant counter-security in the amount of $2,302,946.76. Had Agrocorp brought its action first, it would have been able to secure this amount, and the fact that the order of the claims is opportunely in favor of Prestigious should not limit this award.

9

In the alternative, if the Court does limit the initial security that Prestigious is required to post to an amount equal to that which Prestigious has attached, namely $753,532.09, the Court's order should stipulate that Prestigious must provide security dollar for dollar for any additional funds belonging to Agrocorp that are attached or restrained by Prestigious. Including such a provision in the Court's order will avoid the necessity of potential repeated applications for counter-security, if and when, additional funds transfers are restrained. This approach was used in the case of <u>Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A.</u>, 2007 U.S. Dist. LEXIS 18827, * 7 - 8 (S.D.N.Y. Feb. 26, 2007) (Plaintiff was ordered to post a bond or other satisfactory security and to provide additional security matching any additional property plaintiff has restrained or is able to restrain in the future in any jurisdiction in connection up to the maximum of the counterclaim).

**POINT IV**

**AGROCORP'S ATTACHED FUNDS SHOULD BE RELEASED
AND THE ATTACHMENT VACATED IN THE EVENT THAT
<u>PRESTIGIOUS DOES NOT PROVIDE COUNTER-SECURITY</u>**

Again, the policy to place the parties on equal footing in relation to security blankets motions for counter-security. *See,* <u>Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.</u>, 263 U.S. 629, 638-639 (1924). Certainly, when one party posts security and the other fails to comply with a court order to do the same, inequity results.

This Court has demonstrated its willingness to vacate a plaintiff's attachment if that plaintiff fails to comply with an order to provide security for a counterclaim. *See,* <u>Verton Navigation</u>, 1992 U.S. Dist. LEXIS 517 (S.D.N.Y. January 21, 1992) (dismissing

10

plaintiff's complaint for failure to comply with court's order to post counter-security). Additionally, other circuits have vacated attachments when a party claiming financial inability failed to post counter-security. *See, e.g.*, <u>Titan Navigation, Inc. v. Timsco, Inc.</u>, 808 F.2d 400 (5th Cir. 1987). In <u>Titan Navigation</u>, the court concluded that "there usually would be little or no reason to permit a complainant to enjoy unilateral security rights, absent strong justification..." *Id.*

In the present matter, Agrocorp requests an order of this court stating that Agrocorp is entitled to the release of its restrained funds in the event that Prestigious fails to provide adequate security. To allow otherwise would create an inequitable situation where one party is protected, leaving the other to suffer with the resulting injustice.

## CONCLUSION

The circumstances of this matter are clear: the counterclaim presented by Agrocorp is properly brought because it arises from the same transactions as the allegations in the Verified Complaint, is not frivolous, and does not prevent Prestigious from bringing suit, particularly in London where arbitration is actively proceeding. Prior decisions of this Court as well as leading commentators have conceded that full security places both parties on equal footing in terms of total certainty of full judgment. In the alternative, the granting of relief equal to that attached by Prestigious would ensure protection for part of Agrocorp's claim, and the addition of a dollar-for-dollar increase would safeguard any additionally attached funds and put the parties on an equal footing.

11

Dated: Port Washington, New York
       October 4, 2007

CHALOS O'CONNOR & DUFFY
Attorneys for Defendant,
AGROCORP INTERNATIONAL PTE. LTD.

By:    _____
       Owen F. Duffy (OD-3144)
       George E. Murray (GM-4172)
       366 Main Street
       Port Washington, New York 11050
       Tel:     516-767-3600
       Telefax: 516-767-3605
       Email: ofd@codus-law.com

To:    Via ECF
       Waesche, Scheinbaum & O'Regan, P.C.
       Attorneys for the Plaintiff,
       PRESTIGIOUS SHIPPING CO. LTD.
       111 Broadway, 4th Floor
       New York, NY 10006

       Attn:   John R. Foster, Esq.