CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Defendant,
Agrocorp International Pte. Ltd.
366 Main Street
Port Washington, New York 110050
Telephone:   516-767-3600
Telefax:      516-767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PRESTIGIOUS SHIPPING CO. LTD.,                :
                                              :
                                              :
                    Plaintiff,                :       07 CV 7101 (CM)
                                              :
                                              :
     - against -                              :
                                              :
                                              :
                                              :
AGROCORP INTERNATIONAL PTE. LTD.,             :
                                              :
                                              :
                    Defendant.                :
-----------------------------------------------------------------x

**ATTORNEY'S AFFIDAVIT
IN SUPPORT OF DEFENDANT AGROCORP'S
MOTION FOR COUNTER-SECURITY
PURSUANT TO SUPPLEMENTAL RULE E(7)**

State of New York   :
                        :ss.
County of Nassau   :

Owen F. Duffy, being duly sworn, states under penalty of perjury as follows:

1. I am a member of the Bar of the State of New York, and I am admitted to practice before this Court.

2. I am a member of the firm of Chalos, O'Connor & Duffy, LLP, attorneys for the Defendant AGROCORP INTERNATIONAL PTE. LTD., (hereinafter "Agrocorp"), in this action.

3. I am fully familiar with the matters set forth in this affidavit, and my knowledge of the matters set forth in this affidavit is based on information provided to me by Defendant Agrocorp, its agents and attorneys and my own independent research.

4. I submit this affidavit for the purpose of setting forth the facts and introducing evidence of the facts to support Agrocorp's Motion for Counter-Security Pursuant to Supplemental Rule E(7).

### THE PARTIES

*The Plaintiff Prestigious Shipping Co. Ltd.*

5. The Plaintiff, PRESTIGIOUS SHIPPING CO. LTD. (hereinafter "Prestigious"), is a foreign company organized and operating under foreign law. *See,* Exhibit 1, Verified Complaint at ¶ 2.

6. The Plaintiff Prestigious is an entity incorporated under the laws of the Malta, with its only place of business is in Singapore at the offices of Universal

Navigation Pte. Ltd. 3, Shenton Way, 11-04, Shenton House, Singapore 068805. *See*, Exhibit 1, Verified Complaint, at ¶ 2.

7. The Plaintiff Prestigious alleges that "at all relevant times" it was the owner of the self-trimming bulk carrier, M/V PRESTIGIOUS. *See*, Exhibit 1, Verified Complaint, at ¶ 2.

8. The Plaintiff Prestigious is a one-ship company with only a "brass plate[1]" presence in Malta, but which conducts all of its business from offices in Singapore.

### *The Defendant Agrocorp International Pte. Ltd.*

9. The Defendant Agrocorp is an entity duly incorporated in Singapore having a registered office at 133 New Bridge Road, #22-01/02, Chinatown Point, Singapore 059413. *See*, Exhibit 1, Verified Complaint, at ¶ 3, *and see* Exhibit 2, Answer with Affirmative Defenses at ¶ 3 admitting same, *and see*, Exhibit 3, Agrocorp website printout of "Contact Us" page, *and see*, Exhibit 9, Points of Defense in the London Arbitration at ¶ 5.

10. The Defendant Agrocorp is an international trading house formed in 1990 specializing in the physical trading of agricultural commodities including rice, wheat, pulses & beans, sugar, animal & bird feed, oil seeds and other products. *See*, Exhibit 4, Agrocorp website printout, *and see*, Exhibit 1, Verified Complaint, at ¶ 3, *and see*, Exhibit 9, Points of Defense in the London Arbitration at ¶ 6.

---

[1] A Brass Plate company is one which has no physical presence at its registered office other than its name on a door. Legal and accounting firms in tax havens, such as Malta, provide registered office facilities to brass plate companies.

## THE BACKGROUND TO THE INSTANT LITIGATION

### *The Underlying Dispute between Prestigious and Agrocorp*

11. On or about February 21, 2005, the Plaintiff Prestigious and the Defendant Agrocorp entered into a Charter Party whereby Plaintiff's vessel, the M/V PRESTIGIOUS, was chartered by Defendant Agrocorp to carry the Defendant Agrocorp's cargo of bagged sugar from Santos, Brazil to Chittagong, Bangladesh. *See*, Exhibit 7, Charter Party.

12. The Charter Party states that "This Charter Party shall be construed in accordance with English Law. Arbitration in London." *See*, Exhibit 7, Charter Party at Clause 53.

13. Plaintiff Prestigious admits in its Verified Complaint that all claims between the parties arising out of the Charter Party are subject to London arbitration with English law to apply. *See*, Exhibit 1, Verified Complaint at ¶ 10.

14. During the course of the voyage of the M/V PRESTIGIOUS and after the vessel's arrival at Bangladesh, a substantial portion of the cargo was damaged and, as a consequence, there were substantial delays in the discharge of the cargo of bagged sugar in Bangladesh. *See*, Exhibit 8, Points of Claim in the London Arbitration, at ¶¶ 10-11 *and* Exhibit 9, Points of Defense in the London Arbitration at ¶¶ 8-10.

15. Plaintiff Prestigious alleges that Defendant Agrocorp was responsible for the lost time and cargo; whereas, Defendant Agrocorp denies liability on the basis, *inter alia*, that the vessel the M/V PRESTIGIOUS was not fit to load the cargo and all of the damages and delays were attributable to the acts or omissions of Plaintiff, Prestigious.

*See,* Exhibit 8 and, *compare* Exhibit 9, Points of Defense in the London Arbitration at ¶¶ 8-10.

16.    The indisputable fact of the matter is that, shortly after Prestigious' vessel arrived in Chittagong, Bangladesh, water was found in the vessel's No. 1 cargo hold and all of the cargo in that hold was damaged, s*ee*, Exhibit 9, Points of Defense in the London Arbitration at ¶¶ 8-10, and all of the delays in Chittagong were a direct consequence of the damaged cargo. *See*, Exhibit 9, Points of Defense in the London Arbitration at ¶ 11.23.

### *The London Arbitration between Prestigious and Agrocorp*

17.    Pursuant to the Charter Party's arbitration clause, arbitration was instituted in London by Plaintiff Prestigious and this point is evidenced by the Plaintiff's filing and service of Points of Claim on March 23, 2007. *See*, Exhibit 8, Points of Claim in the London Arbitration.

18.    The Defendant Agrocorp responded to the demand for arbitration, and it is participating in the London Arbitration and this is evidenced by the fact that Defendant Agrocorp filed Points of Defence on May 14, 2007. *See*, Exhibit 9, Points of Defence in the London Arbitration.

19.    The London Arbitration between Prestigious and Agrocorp is still presently pending, there are hearings to be held and no decision has been made by the arbitration panel. *See*, Exhibit 1, Verified Complaint at ¶ 10.

## THE INSTANT LITIGATION

### *Prestigious commenced suit against Agrocorp*

20. On August 9, 2007, with the London Arbitration having been commenced and still pending, the Plaintiff Prestigious filed a Verified Complaint against Defendant Agrocorp in the Southern District of New York. *See*, Exhibit 1, Verified Complaint.

21. Plaintiff Prestigious' Verified Complaint recounts essentially the same allegations as are set forth in its Points of Claim in the London Arbitration. *Compare*, Exhibit 1, Verified Complaint, *and* Exhibit 8, Points of Claim in the London Arbitration.

22. Plaintiff Prestigious seeks $2,160,761.06 in its action in the Southern District of New York including alleged unpaid demurrage, damages, interest, costs, arbitrator fees and attorneys' fees. *See*, Exhibit 1, Verified Complaint at ¶ 13.

23. Plaintiff Prestigious requested in its Verified Complaint that "process in due form of law according to the practice of this Court may issue against Defendant Agrocorp ..." *See*, Exhibit 1, Verified Complaint at page 4, "WHEREFORE" clause "(a)."

### *Prestigious Obtained an Ex Parte Process of Maritime Attachment*

24. Pursuant to that request, this Court issued an *Ex Parte* Order directing the Clerk of the Court for the Southern District of New York to issue a Process of Maritime Attachment in the amount of $2,160,761.06 against any funds found in the district belonging to Defendant Agrocorp. *See*, Exhibit 5, Ex Parte Order of Judge Wood, dated August 9, 2007, directing the Clerk of the Court to issue Process of Maritime Attachment.

25.     Pursuant to this Court's Order for Issuance, the Clerk of the Court issued the Process of Maritime Attachment as directed in the amount of $2,160,761.06 on August 9, 2007. *See*, Exhibit 6, Process of Maritime Attachment.

### *Prestigious restrained funds pursuant to the Process of Maritime Attachment*

26.     Pursuant to the Process of Maritime Attachment, an Electronic Funds Transfers in the amounts of $9,954.00, $604,036.93 and $139,541.16 (for a total of $753,532.09) were attached at American Express Bank on August 20, 2007. *See*, Exhibit 10, Affidavit [of John R. Foster] in Opposition to Motions to Vacate Maritime Attachment dated September 4, 2007.

27.     Pursuant to the Process of Maritime Attachment, another Electronic Fund Transfer, in the amount of $1,407,228.97, was restrained by the Bank of America on Monday, October 1, 2007. *See*, Exhibit 11, email from Plaintiff's counsel dated October 1, 2007.

28.     The Plaintiff Prestigious now has full and complete security for the claims that it is asserting against the Defendant Agrocorp in London Arbitration. *See*, Exhibit 11.

### *Agrocorp enters an appearance in NY and files an Answer*

29.     On August 30, 2007, and subsequent to learning that Plaintiff had obtained a Process of Maritime Attachment *ex parte*, the Defendant Agrocorp filed a Verified Answer with Affirmative Defenses in this action. *See*, Exhibit 2, Answer with Affirmative Defenses.

***Agrocorp and Claimant Indian Bank move to vacate the attachments***

30. In addition, on August 30, 2007, Defendant Agrocorp moved, pursuant to *Supplemental* Rule E(4)(f) and by way of an Order to Show Casue to vacate the attachment. *See*, Docket entries #8 and 9.

31. Indian Bank, a Claimant, also moved, pursuant to Supplemental Rule E(4)(f) and by way of an Order to Show Cause to vacate a part of the attachment in which it claimed ownership. *See*, Docket Entries #10, 12 and 13.

32. Plaintiff Prestigious opposed both motions. *See,* Docket Entries 14 and 15.

33. On September 4, 2007, this court held a hearing on the motions of Agrocorp and Indian Bank to vacate maritime attachments and the motions to vacate were denied. *See*, Docket Entry #24.

***Agrocorp amends its Answer and asserts Counterclaims***

34. With the consent of the Plaintiff Prestigious and leave of this Court, Agrocorp filed an Amended Answer with Affirmative Defenses and asserted three Counterclaims therein against Prestigious on October 2, 2007. *See*, Exhibit 12, Amended Answer with Affirmative Defenses and Counterclaims, and Docket Entry #27.

35. On September 6, 2007, the Defendant Agrocorp had previously requested leave from the Arbitration Tribunal in London to present an Amended Defence and assert its counterclaims against the Plaintiff Prestigious in the ongoing London Arbitration. *See*, Exhibit 13, Facsimile from Haridass Ho & Partners, dated 06 September 2007.

8

36.     The Arbitration Tribunal in London granted leave for Agrocorp to amend its defence and file counterclaims against the Plaintiff Prestigious.

37.     The Defendant Agrocorp has filed its amended defence and counterclaims in the London Arbitration proceeding, and the counterclaims presented in London are consistent with the counterclaims asserted in this action.

### *Agrocorp's First Counterclaim*

38.     Agrocorp alleges in its first counterclaim that, pursuant to the underlying Charter Party, the Plaintiff Prestigious had an obligation to deliver the cargo of sugar at issue in this matter in the same good order and condition as it was in when it was shipped and that Prestigious breached this obligation. *See*, Exhibit 12, Amended Answer with Affirmative Defenses and Counterclaims at ¶¶ 28 and 29.

39.     As a result of the breach by Prestigious, the cargo was damaged and the receivers of the cargo of sugar withheld payment of a sum of US$583,180.46 that was owed to Agrocorp, which sum Agrocorp would have received but for the breach of Plaintiff. *See*, Exhibit 12 at ¶ 30.

### *Agrocorp's Second Counterclaim*

40.     Furthermore, Agrocorp stated in its Second Counterclaim that all of the alleged breaches of charter party and damages, as alleged by Plaintiff Prestigious in its Verified Complaint, were previously resolved pursuant to settlement agreements entered into by Plaintiff Prestigious with various third parties, including the receivers of the cargo of sugar shipped on board the M/V PRESTIGIOUS from South America to Bangladesh

9

on or about August 7, 2005, pursuant to which Prestigious paid the sums of $1,100,000.00, and a further $500,000.00, as compensation for delays in discharging the sugar cargo, damages to the sugar cargo caused by the vessel and costs to discharge the damaged sugar cargo at Bangladesh, to receivers East West Trading and Musa and Sons. *See*, Exhibit 12 at ¶ 33.

41. However, on or about June 30, 2006, which was subsequent to Prestigious' payments, Prestigious, in breach of its settlement agreements, accused third party receivers East West Trading and Musa and Sons of overstating their respective claims for damages and Prestigious sought reimbursement from East West Trading and Musa and Sons in the amount of $1,146,393.00, failing which Prestigious threatened to initiate an action to recover that sum from the receivers in the Courts of Bangladesh. *See*, Exhibit 12 at ¶ 34.

42. As a result of Prestigious' accusations against East West Trading and Musa and Sons in breach of its settlement agreement, East West Trading have since advised Agrocorp, that Prestigious is in breach of the settlement agreement dated August 7, 2005 and, consequently, East West Trading is now asserting a claim against the Defendant Agrocorp in the amount of $1,205,016.30 with respect to specific quantities of the sugar cargo that was damaged while in the M/V PRESTIGIOUS's number 1 and number 3 holds when the vessel arrived in Bangladesh for discharge. *See*, Exhibit 12 at ¶ 35.

43. As a result of Prestigious' failure to deliver the cargo in sound condition and breach of its settlement agreement with the receivers with respect to the damaged sugar cargo, Agrocorp is now unnecessarily and unreasonably exposed to liability to the

10

receivers of the cargo carried on board the M/V PRESTIGIOUS in the amount of $1,205,016.30, plus interest and costs. *See*, Exhibit 12 at ¶ 36.

44.    Furthermore, Prestigious' actions with regard to the receivers of the cargo on board the M/V PRESTIGIOUS and its failure to deliver the cargo in a sound condition constitute a breach of the Plaintiff's obligations under the Charter Party dated February 21, 2005,[2] and, therefore, Prestigious will be held liable to Agrocorp for any sums that the receivers of the cargo may recover from Agrocorp. *See generally*, Exhibits 9 and 12.

45.    In addition to the amount of $1,205,016.30, Agrocorp has sustained additional damages from Prestigious' breach of the Charter Party including: $125,000.00 for late payment of invoices from receivers; and a discount in the amount of $6.50 per metric ton for a total of $139,750.00 that was provided to the receivers as a consequence of the delays in discharge caused by Prestigious's breach of the Charter Party. *See*, Exhibit 12 at ¶ 38.

### *Agrocorp's Third Counterclaim*

46.    Defendant AGROCORP is asserting counterclaims for US$583,180.46 and US$1,205,026.30 in its "Amended Points of Defence and Counterclaim" in the ongoing arbitration in London, England. *See*, Exhibit 12, Amended Answer with Affirmative Defenses and Counterclaims at ¶ 41.

47.    As stated by Plaintiff Prestigious in its Verified Complaint at paragraph 13(d), interest, costs, arbitrator fees and attorney fees are recoverable in arbitration under

---

[2] This is the same Charter Party upon which Plaintiff Prestigious bases its claims in the Verified Complaint. *See*, Exhibit 1, Verified Complaint at ¶4.

11

English law. *See*, Exhibit 1, Verified Complaint at ¶ 13(d) and Exhibit 12, Amended Answer with Affirmative Defenses and Counterclaims at ¶ 42.

48.  As Plaintiff PRESTIGIOUS has alleged these costs to be US$250,000.00 on its claim of US$1,910,761.06, Defendant AGROCORP, having alleged counterclaims in the London arbitration of US$1,788,206.76, and having denied Prestigious' claims, is entitled to the same amount, US$250,000.00, as counter-security for its counterclaims now pending in arbitration in London, England regarding this dispute. *See*, Exhibit 12, Amended Answer with Affirmative Defenses and Counterclaims at ¶ 43.

### *Agrocorp's Counterclaims meet the standard for counter-security*

49.  Counterclaimant Agrocorp's counterclaims are clearly non-frivolous[3], Agrocorp's counterclaims arise from the same transaction or occurrence that is the subject of the original action filed by Prestigious in this Court and Agrocorp could have proceeded *quasi in rem* against Prestigious in an independent suit in the Southern District of New York on these claims.

50.  Prestigious can make no argument that a requirement to counter-secure Agrocorp's claims will impose such burdensome costs upon Prestigious that it will be prevented from having its claims heard, as arbitration in London has already been commenced and Agrocorp is fully participating in that arbitration.

---

[3] The same cannot be said for the Plaintiff's claims in view of the fact that the sub-standard condition of the Plaintiff's vessel was the root cause of all damages to cargo and delays the discharge port in Bangladesh.

## CONCLUSION

51.     Under these circumstances, where counterclaims arise from the same transactions as the Plaintiff's claims, the counterclaims are not frivolous and requiring counter-security will not prevent the Plaintiff from bringing suit, this court should, pursuant to Rule E (7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, issue an order to place the parties on an equal footing regarding security for their claims.


Dated: Port Washington, New York
       October 4, 2007

_____
Owen F. Duffy


Subscribed and sworn to before me this
October 4, 2007

_____
Notary Public, State of New York

GEORGE E. MURRAY
Notary Public, State of New York
No. 02MU6108120
Qualified in New York County
Commission Expires April 12, 2008

13