# EXHIBIT 6

## PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT

## THE PRESIDENT OF THE UNITED STATES OF AMERICA

To the MARSHAL of the UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK, GREETINGS:

WHEREAS a Verified Complaint has been filed in the United States District Court, Southern District of New York, on the 9th day of August, 2007, and styled:

PRESTIGIOUS SHIPPING CO. LTD.,

                    Plaintiff,

    v.

AGROCORP INTERNATIONAL PTE. LTD.,

                    Defendant.

in a certain action for amounts due the Plaintiff from the Defendant in connection with a claim for breach of a maritime contract for the charter of the vessel *M/V Prestigious*, and praying for Process of Maritime Attachment and Garnishment against the said Defendant in the amount of $2,160,761.06; and,

WHEREAS, this Process is issued pursuant to such prayer and requires that a garnishee shall serve its Answer, together with answers to any Interrogatories served with the Verified Complaint, within 20 days after service of process upon him and requires that Defendant shall serve their Answer within 30 days after process has been executed, whether by attachment of property or service on the garnishees or arrest of property within the possession of the garnishees.

NOW, THEREFORE, we do hereby command you that if the said Defendant cannot be found within the District, you attach all assets, cash, funds, escrow funds, credits, wire transfers, electronic fund transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-

charter hire, or any other assets of, belonging to, due or being transferred for the benefit of the

Defendant, Agrocorp International Pte. Ltd., as may be in the possession, custody or control of,

or being transferred through ABN Amro, Atlantic Bank of New York, American Express Bank,

Bank of America, BNP Paribas, Calyon, Citibank, Deutsche Bank, HSBC USA Bank NA,

JPMorgan Chase Bank, Natexis Banques Populaires, Rabobank Nederland, Standard Chartered

Bank, The Bank of New York, and/or Wachovia Bank, together with any such assets as may be

held by any other garnishee(s) on whom a copy of this Process of Maritime Attachment and

Garnishment may be served, and that you seize them and promptly after execution of this

process, file the same in this Court with your return thereon.

WITNESS, the Honorable _Colleen McNahon_ United States District Judge

of said Court, this 1○ th day of August, 2007, and of our Independence the two hundred and

thirtieth.

                                        **J. MICHAEL McMAHON**
                                                Clerk

                                        By: _____
                                               Deputy Clerk

NOTE:  This process is issued pursuant to Rule B(1) and Rule C of the Supplemental Rules for
Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

                    A CERTIFIED COPY
                    J. MICHAEL McMAHON,                    **CLERK**

                    BY _____
                               **DEPUTY CLERK**

# EXHIBIT 7

Tramp Maritime Inc.
9, II Merarchias Street 185 38 Piraeus
Tel.:(+30)210 4133228/Fax:(+30)210 41 33559
E-Mail: chartering@tramp.maritime.gr

**1st ORIGINAL**

## Sugar Charter-Party 1999

DATE ... 21ST OF FEBRUARY 2005 ..............................

| | | |
|---|---|---|
| CHARTERERS/ OWNERS | **It is this day mutually agreed** BETWEEN .AGROCORP. INTERNATIONAL. PTE .LTD. SINGAPORE...... Charterers | 1 |
| | 1. and Owners ... MESSRS PRESTIGIOUS SHIPPING CO., .LTD............................................ | 2 |
| | of the good motor vessel called the ...................... .. M/V "P.R.E.S.T.I.G.I.O.U.S" ........ | 3 |
| | highest class ...........A B S ................(und to be of that class for the duration of the voyage), Last Special | 4 |
| | Survey: ........... Flag: ...MALTA........ Built: .1978. ....... Call Sign: ..................... | 5 |

| | | |
|---|---|---|
| DESCRIPTION OF VESSEL | 2. G.T./N.T: ..... 14,126 ... / ....8,787 ...... Type: ..... FORTUNE TYPE .. | 6 |
| | Summer deadweight (salt water): 22,669 MT .... | 7 |
| | Fully loaded draught (summer marks) salt water: ............. LOA/Beam: 164,33/22,86 M ...... | 8 |
| | Engines located amidships/aft: ............ Number of Holds/Hatches: ...5...... Hatch Sizes: ............ | 9 |
| | ............. SEE CLAUSE 30 ............ | 10 |
| | Gear (including vessel's union purchase capacity): ... SEE CLAUSE 30 ................... | 11 |
| | Tunnel shaft, if any, to be floored over. Speed: ....... ............. Bale/Grain Cubic:( 1,091,470/ ...... | 12 |
| | ..... 1,057,710........ ) Last ..... cargoes: .................. | 13 |

(a) Owners guarantee that the vessel is fully insured for Hull and Machinery risks. Owners guarantee that the vessel — 14
is insured with ............................................................................................for the amount of — 15
USD ............... and that the vessel will remain fully covered for the duration of this voyage. — 16
(b) Owners guarantee that the vessel is fully P & I covered with ................................................... — 17
................................................ and that the vessel will remain fully covered for the duration of this voyage. — 18
(c) Owners guarantee that the vessel will not change flag/class/Ownership/Managers/P & I Club coverage during — 19
the currency of this Charter-Party without Charterer's prior consent. — 20
(d) Owners guarantee: — 21
  (i) that the vessel carries and will do so for the duration of the voyage all certificates and other documentation — 22
  whatsoever required by her flag, state authorities and/or the authorities at any place of call under this — 23
  Charter-Party, and — 24
  (ii) that, from the date of coming into force of the International Safety Management (ISM) Code in relation to — 25
  the vessel and thereafter during the currency of the voyage both the vessel and "the Company" (as defined — 26
  by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall — 27
  provide the Charterers with a copy of the relevant document of compliance and Safety Management Certificate. — 28
  Compliance by the Owners with the provisions of this Clause 2(d) is a condition of this Charter-Party the — 29
  breach thereof will entitle the Charterers to claim damages for any costs/consequences arising as a result — 30
  and/or at any time cancel this Charter-Party. — 31

| | | |
|---|---|---|
| POSITION | 3. Now .VESSEL CURRENTLY DISCHARGING BAGGED RICE AT PORT HARCOURT WITH ABOUT .8,500 .MTS. LEFT | 32 |
| | ...ON BOARD ABD ETC/S 22ND FEBRUARY AGW/WP,.BEST .ETA. SANTOS .6TH .MARCH .AGW/WP/UCAE....... | 33 |
| | that the said vessel being tight, staunch, strong and in every way fitted for the voyage including the fulfilment of all | 34 |

| | | |
|---|---|---|
| LOADING AREA | 4. documentary requirements for the service contemplated by this Charter-Party, shall with all Charter-Party speed, | 35 |
| | weather permitting, sail and proceed to .1-.2. SAFE. BERTH. SANTOS... .CHARTERERS .GUARANTEE .MINIMUM....... | 36 |
| | .10-.65. MTS DRAFT...................................... and there load always afloat, or safe | 37 |
| | aground where vessels of similar size are accustomed to lie in safety, at ONE or TWO safe ports, ONE or TWO safe | 38 |
| | loading berths and/or safe loading anchorages each port, as ordered, from the Factors of the said Charterers, a full | 39 |

| | | |
|---|---|---|
| DESCRIPTION OF CARGO | 5. and complete cargo of. MINIMUM / MAXIMUM 21.000 METRIC TONS UPTO MAX 21.500 METRIC TONS | 40 |
| | ; IN OWNERS' OPTION OF BAGGED SUGAR SF ABOUT 48' WITHOUT GUARANTEE....... | 41 |
| | metric tons ................................... per cent net weight in Charterer's/Master's option, as sole cargo only, | 42 |
| | which the said Charterers bind themselves to ship, always under ship's deck in cargo holds only. The said cargo to be | 43 |
| | brought to and taken from alongside, free of expense and risk to the ship, and being so laden shall proceed with all | 44 |

| | | |
|---|---|---|
| DISCHARGING AREA | Charter-Party speed as directed to .1-.2 SAFE. BERTH AND/OR ANCHORAGES .CHITTAGONG.. CHARTERERS ....... | 45 |
| | ............. GUARANTEE. MINIMUM. 10-.65. MTS DRAFT............................................ | 46 |
| | ...................................................................................................... | 47 |
| | ...................................................................................................... | 48 |
| | ...................................................................................................... | 49 |
| | or so near thereunto as she may safely get always afloat or safe aground where vessels of similar size are accustomed | 50 |
| | to lie in safety, and there deliver the same in ONE or TWO safe discharging berths and/or safe discharging anchorages | 51 |
| | each port as ordered, on being paid freight "as per agreement". | 52 |

| | | |
|---|---|---|
| EXCEPTIONS | 6. The Act of God, perils of the sea, fire on board, in hulk or craft, or on shore, crew, enemies, pirates, and thieves, | 53 |
| | arrests and restraints of princes, rulers and people, collisions, stranding, and other accidents of navigation excepted, | 54 |
| | even when occasioned by negligence, default, or error in judgement of the Pilot, Master, mariners or other servants | 55 |
| | of the Shipowners. Not answerable for any loss or damage arising from explosion, bursting of boilers, breakages of | 56 |
| | shafts, or any latent defect in the machinery or hull, not resulting from want of due diligence by the Owners of the | 57 |
| | ship, or any of them, or by the ship's Husband or Manager. | 58 |

| | | |
|---|---|---|
| OWNERS' RIGHT TO APPOINT PROTECTING AGENTS BOTH ENDS. | | |
| AGENTS | 7. At port(s) of loading and discharging Owners to appoint, employ and to be solely responsible for Agents, as selected | 59 |
| | by Charterers without risk or liability to Charterers, for all ship's business, owners paying the agency fees. | 60 |

| | | |
|---|---|---|
| TAXES/DUES/ DISBURSEMENTS | 8. Except for the taxes and/or dues specified below all taxes and/or dues on vessel and/or freight at load/discharge ports | 61 |
| | to be for Owners' account and all taxes and/or dues on cargo to be for Shippers'/Receivers/Charterers' | 62 |
| | account at discharge port(s). | 63 |

| | | |
|---|---|---|
| | / LEVIES | RECEIVERS/CHARTERERS | |
| | (a) In BRAZIL – SEE CLAUSE 35. | 64 |
| | Brazilian Merchant Marine Renewal Tax, Quota da Provedencia, Contribuicao da Uniao and Port Utilisation Tax | 65 |
| | to be for Shippers' account. All other customary taxes and/or dues on the vessel to be for Owners' account. | 66 |
| | (b) In GERMANY | 67 |
| | Quay, Weight and Tonnage Dues to be for Shippers' account. | 68 |
| | (c) In MOROCCO | 69 |
| | Peage Dues to be for Receivers' account. | 70 |
| | (d) In SPAIN | 71 |
| | Tonnage Tax to be for Owners' account. | 72 |
| | (e) In PORTUGAL | 73 |
| | Gold Dues (Commercial Maritime Tax) to be for Receivers' account. | 74 |
| | (f) In YEMEN | 75 |
| | Compulsory shore cranage to be for Receivers' account. | 76 |
| | (g) In SRI LANKA | 77 |
| | Sri Lankan Tonnage Dues to be for Owners' account. | 78 |

(h) In FINLAND

Finnish Fairway Dues to be for Owners' account.

(i) In GHANA

Ghana Shippers' Council Service charge to be for Owners' account.

At all ports of loading and discharging all customary port charges including pilotage and harbour dues on the vessel  to be for Owners' account.  Owners to put load and discharge port Agents in funds prior to vessel's arrival.  In the event that Owners fail to put Agents in funds prior to vessel's arrival and vessel's berthing/commencement of loading/ discharging/sailing is delayed, then Owners to be fully responsible for all/any delays/costs/consequences that may arise either directly or indirectly as a result.

| **DEPARTURE** |

| **PROVEN** |

FREIGHT PAYMENT   9.   Freight payable per metric ton on net Bill of Lading weight being in full of all taxes  and/or dues stipulated to be for
SEE ALSO CLAUSE 62.      Owners' account as per Clause 8. Port charges, Pilotages, and Harbour dues on the vessel. The freight is deemed earned upon the safe arrival of the vessel and right and true delivery of the cargo at destination. The freight to be paid in United States Currency to Owners' Bank . . . . . . . . . . . . . . . . . . . . . . . . .

| **ON COMPLETION OF LOADING, SHIP**
**AND/OR CARGO LOST OR NOT LOST.** |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Owners to advise their New York corresponding Bank, otherwise Charterers not to be responsible for late receipt of
freight by Owners . . . . . . . . . . . . . . . . . . . . . . . . . .

| **3 BANKING DAYS OF SIGNING/RELEASING BILLS OF LADING.** |

| **ONE HUNDRED PERCENT.** | **MARKED FREIGHT PAYABLE AS PER CHARTER PARTY.** . . . . . . . . . . . . . .

as follows: 100% (Ninety per cent) of the estimated freight less commissions, estimated loading despatch and extra
insurance, if any, to be paid within seven days of sailing from final loading port, provided that signed clean bills of
lading are released immediately to Shippers on completion of loading, stating 'Freight payable as per Charter-Party'.
The balance of freight, from which load and discharge despatches are to be deducted (allowing for any estimated
loading despatch already deducted) or to which load and discharge demurrages are to be added, as applicable, to be paid
on right and true delivery of the cargo and/or surrender and agreement of timesheets and statements of facts and signed
notice of readiness, with Owners' calculations of any demurrage or despatch incurred at loading and discharging ports.

Any advance on freight made to Owners in order to obtain 'Freight Prepaid' Bills of Lading is not recoverable
from the shippers/cargo if the vessel and/or cargo is lost by reason or as a consequence of any of the excepted perils  as
listed in Article IV, Rule 2 of the Hague Visby Rules.

| **IN ACCORDANCE WITH RIDER CLAUSE 56.** |

LIEN   10.   It is also agreed that the Owners of the said vessel shall reserve to themselves the right of lien upon the cargo laden
on board for the recovery and payment of all freight, deadfreight and demurrage (if any).

CESSOR   11.   Charterers liability to cease once cargo is shipped and Bills of Lading signed, except as regards payment of freight,
deadfreight and demurrage (if any).   | **AND 2** | **OWNERS** |

NOTICES   12.   Notice on fixing and 20, 14, 10 and 7days provisional notice, 72, 48 and 24 hours definite notice of E.T.A. at loading
SEE ALSO CLAUSE 45.      range or first loading port is to be sent by Master by cable/telex to . AG(AT)AGROCORP.COM.SG .D . . . . . . . . . .

| **DIRECT** |   Owners or Master to keep Charterers fully informed of any

change in ship's position prior to loading. Owners to be responsible for all consequences and damages of whatsoever
nature and howsoever arising in the event of Owner's or Master's failure to keep Charterers fully informed of any
change in ship's position prior to loading.  Owners to advise Charterers whether they intend to bunker prior arrival at
loadport and/or their bunkering plans prior to sailing from last load port. Charterers to nominate first (or sole) loading
port on receipt of the 72 hours definite notice to Owners or their Agent.  Nomination of additional loading port (if
any) to be declared 24 hours prior to sailing from previous port, and any nomination given earlier not to be regarded
as a final declaration.

Master to send a cable/telex to Charterers (cable/telex address . AG(AT)AGROCORP.COM.SG . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ) on departure from last loading port, giving the
gross and net quantities, and number of bags stated on Bills of Lading, also sailing date, and E.T.A. at discharging range
or first discharging port. On sailing from final load port Master to cable/telex Charterers every 48 hours vessel's ETA
basis intended discharge area or port.  Should the vessel be delayed on passage for any reason longer than 24 hours Master
to immediately cable/telex Charterers reason for delay with revised ETA and Owners responsible for all consequences
and damages of whatsoever nature and howsoever arising in the event of Owners or Master failing to do so.

| **WITHIN 7 DAYS BEFORE**
**VESSEL'S ARRIVAL AT**
**THE LOADING PORT** |

LAYDAYS/   13.   Laydays for loading not to count before the . . . . . . . . . . . . . . . .6TH MARCH .2005. . . . . . . . . . . . . . . . . . .
CANCELLING      and if the ship is not ready to load by the . . . . . . . . . . . . . . . 15TH MARCH. 2005. . Charterers have
the option to cancel this Charter-Party, declarable latest upon vessel's arrival at loading port.

STEVEDORES   14.   Stevedores for loading, stowing, trimming and discharging to be employed by Charterers or Shippers/Receivers at
F.I.O.S.T.      their expense and under Master's control.  Stevedores shall be considered as Owners servants, and the Charterers/
Shippers/Receivers are not to be responsible for any negligence of whatsoever nature, default or error in judgement
of the stevedores employed.   | **CHARTERERS AT THEIR EXPENSE, AND SHIP TALLYMAN TO BE EMPLOYED BY**

TALLYMEN   15.   | **BOTH ENDS** |   Shore tallymen to be employed by the Vessel at the expense of the Vessel Quantity stated on Bills of Lading to be
| **AS PER SHORE TALLY** |   'conclusive evidence against the ship as to the number of bags of sugar shipped, errors and obvious fraud excepted.

Ship to be responsible for any number of bags short delivered of signed Bills of Lading quantity.

MATE'S RECEIPTS   16.   Clean Mate's Receipts to be signed for each parcel of sugar when on board, and Master to sign Bills of Lading in
AND BILLS OF      accordance therewith as presented by Charterers or Shippers.  Master to reject any cargo that would involve the
LADING      clausing of Mate's Receipts and/or Bills of Lading.  If Bills of Lading are issued showing a declaration of discharging
to official declaration in accordance with Clause 20, such destination not to constitute a declaration of discharging
| **WITH THE MATE'S RECEIPTS** |   port(s).  If this situation occurs, Owners or their Agents will authorise Charterers or nominated Agents without
reservation or delay, the amendment, addition and/or deletion with regard to destination shown on Bills of Lading, or,
to the signing of new sets of Bills of Lading, Charterers or their Agents delivering up old sets of Bills of Lading. in
exchange.  Bills of Lading to be released and forwarded to Shippers or their Agents for each parcel immediately on
completion of loading such parcel.  In the case of a single Bill of Lading covering the entire cargo such Bill of Lading
to be released immediately on completion of loading.

PREPARATION FOR   17.   Ship's holds to be odourless and free from insects, properly swept, cleaned and dried to the satisfaction of Shippers'
LOADING      and/or Charterer's Agents before loading.  Ship's holds to be washed down only if cargo injurious to sugar carried
AND DISCHARGING      previously, and if done, holds to be completely dry before tendering notice of readiness.  Charterers have the right to
| **HOLD** |   arrange a condition survey and/or hose test prior to commencement of loading which to be at Charterer's expense
for which purposes a Lloyds Agent or Salvage Association Surveyor will be used where possible, failing which a
mutually agreed Surveyor shall be used.

(a) BAGGED CARGO.

| **CHARTERERS/SHIPPERS** |   Ship to provide and lay sufficient dunnage and mats or Kraft paper, and to be so dunnaged so as to effectively
protect and preserve the bags coming into contact with the edges of beams and stringer-plates.

If cargo is stowed in refrigerator hatches, alleyways, bunker hatches, deep tanks or other awkward places,
Owners shall pay the extra labour costs of loading and/or discharging from such places.  The loading and discharging
rate shall be half the Charter-Party loading and discharging rate for cargo carried in such places.

No paint or other injurious substance to be used by the ship for marking the bags, the ship to be responsible
for all loss or damage caused thereby.

No bags to be cut for stowage purposes.  Ship to be responsible for all loss sustained in the event of bags
being cut.

(b) BULK CARGO.

No cargo to be loaded in deep tanks or other awkward places.

All cargo battens, tween-deck hatch boards, dunnage and ship's gear and stores, etc., to be removed prior to loading and stowed in compartments not containing sugar. Spare propeller if carried in hold, to be properly boxed in. The removal and replacement of beams, hatch covers, tents and tantrop-lids, as and when required by Charterers, to be carried out by ship's crew at ship's expense at both ends.

Owners consider the vessel suitable for grab discharge. Tanktops, tunnel shaft and exposed pipe lines to be effectively protected by Owners. Bleeding holes in the coamings to be securely covered, and bilge limbers to be sealed.

Damage by grabs (if any) to be settled directly between Owners and Stevedores, Charterers incurring no responsibility therefore.

Vessel's holds not to be ventilated during the voyage. All ventilators to be sealed and any access of fresh air to the cargo to be strictly prevented.

At discharging port(s) the collection of sweepings from the holds, bilges and coamings to be done by the Stevedores at Receivers expense, and time used to count as laytime.

Vessel not to take any fresh or ballast water on board at discharging port(s) until the vessel has completed discharge.

**GENERAL** 18. Vessel to be in possession of a valid certificate of efficiency for winches and derricks/cranes for the duration of this Charter.

Vessel to supply at both ends, at all times, free of charge to Charterers, winches and derricks/cranes, power, and **HATCHES** gear in good working order at all hatches including ropes as required for loading and discharging sugar, also full lights for night work on deck and in the holds, if required.

**FOR THE SHIFT OR SHIFTS DURING WHICH SUCH BREAK DOWN OCCURED.** In the event of a breakdown of a winch and derrick/crane or winches and derricks/cranes by reason of disablement or insufficient power and/or failure of lights, the laytime to be extended pro-rata for the period of such inefficiency in relation to the number of working gangs available. If on demurrage, time lost pro-rata to be deducted from same.

**IF SHORE GEAR USED LAYTIME OR TIME ON DEMURRAGE TO COUNT.** Owners are to pay in addition the cost of labour affected by the breakdown, either stood off or additionally engaged including the hire of shore gear, or as otherwise regulated by the custom of the port.

The Shippers and/or Consignees will be permitted to load and discharge outside ordinary working periods and during excepted periods, the Owners providing free of charge all vessel's facilities, including services of Officers and Crew.

**UNLESS NOT PERMITTED BY LOCAL REGULATIONS IN WHICH CASE SHORE LABOUR TO BE PAID FOR BY THE CHARTERERS/SHIPPERS/ RECEIVERS.** Understood rates of loading and discharging in the Charter Party are based on a minimum of four hatches being available at commencement of loading and discharging; if less than four hatches are available, loading and/or discharging rate to be reduced pro-rata. Vessel having less than four hatches, but with any hatch exceeding fifteen metres length (or less at Charterers' discretion) and able to work two gangs simultaneously with ship's gear, shall have such hatch counted as two hatches.

All opening and closing of hatches and tweendeck hatches, including the handling and shifting of beams, at loading and discharging ports is to be done or paid for by the vessel, and time used not to count as laytime.

**LOADING LAYTIME SEE CLAUSE 33.** 19. At each loading port, even if loading commences earlier, laytime for loading to begin at 1400 hours if written/cabled/ telexed notice of readiness to load is tendered to Agents before noon and at 0800 hours next working day if written/ **WIPON/WIFPCON/WICCON** cabled/telexed notice of readiness is tendered to Agents after noon. Notice of readiness to be tendered to Agents in ordinary office hours, Saturdays afternoon, Sundays (or local equivalents) and holidays excepted, whether in berth or not.

Laydays at the average rate of . . . . . . . . . 1,900 . . . . . . . . . metric tons calculated on gross weight **AS PER BIMCO CALENDAR** provided vessel can receive at this rate, per weather working day of 24 consecutive hours, time from noon Saturdays to 0800 hours, Mondays (or local equivalents) and from 1700 hours day preceding a holiday until 0800 next **SATURDAYS 1200 HRS.** working day excepted, even if used, shall be allowed to the said Charterers, for loading and waiting for orders. Time employed in shifting anchorages and/or loading places within the same port or its jurisdiction not to count as laytime, and shifting expenses to be for Owners account.

**OR DUE TO NON-READINESS OF THE SHIPPERS** At loading port(s) in the event of congestion Master has the right to tender notice of readiness at the customary waiting place in ordinary office hours by cable/telex to Agents whether in berth or not, whether in port or not, whether customs cleared or not. Time proceeding from customary waiting place to loading **RADIO/FAX/EMAIL PROVIDED VESSEL HAS SAME** berth/anchorage not to count as laytime. If the boatquay survey is caused under the vessel at the customary waiting place and after vessel's arrival at loading berth/anchorage the vessel fails her survey, laytime/demurrage shall cease from such failure until the vessel's holds are passed accordingly.

**DISCHARGING NOTICES** 20. Master to cable . . . . . . . . . . . . . . . . . . . . . . . . . . . [5] [3] 7, 4, 6 days and 24 hours off discharging port or range, giving his E.T.A.

Charterers to declare first (or sole) discharging port to Owners or their Agents upon receipt of Master's 4 days notice. Each additional discharging port (if any) to be declared to Owners or their Agents latest 24 hours prior to sailing from previous port, and any nomination given earlier not to be regarded as a final declaration. Owners to be responsible **OWNERS/MASTER** for all cost, consequences and damages of whatsoever nature and howsoever arising in the event of Owners or Master's failure to keep Charterers fully informed of any change in ship's position prior to arrival at discharging port(s).

**DEVIATION THE ADVISED** 21. The ship has liberty to call at any port or ports on the route for fuel or other supplies, and to sail without pilots also to tow and assist vessels in distress for Owners benefit, or to be assisted in all situations and to deviate for the purpose of saving life or property.

**DISCHARGING LAYTIME SEE CLAUSE 33.** 22. At each discharging port, even if discharging commences earlier, laytime for discharge to begin at 1400 hours if written/ cabled/telexed notice of readiness to discharge is tendered to Agents before noon and at 0800 hours next working day **WIPON/WIFPCON/WICCON** if written/cabled/telexed notice of readiness is tendered to Agents after noon. Master has the right to tender notice of readiness from the customary waiting place in ordinary office hours. Notice of readiness to be tendered to Agents in **THURSDAYS** ordinary office hours Saturdays afternoon, Sundays (or local equivalents) and holidays excepted whether in berth or not.

**SATURDAYS** Ship to discharge at the average rate of . . . . . . . . 2,900 . . . . . . . metric tons calculated on gross weight provided vessel can deliver at this rate, per weather working day of 24 consecutive hours, time from Saturdays noon to 0800 hours **AS PER BIMCO CALENDAR** Mondays (or local equivalents) and from 1700 hours day preceding a holiday until 0800 hours next working day excepted, even if used. Time employed in shifting anchorages or discharging places within the same port or its jurisdiction not to **OR NON READINESS OF THE RECEIVER** count as laytime, and shifting expenses to be for Owners' account. SEE CLAUSE 33

At discharging port(s) in the event of congestion Master has the right to tender his notice of readiness by cable/ telex in ordinary office hours to Agents whether in berth or not, whether in port or not, whether in free pratique or not, whether customs cleared or not. Time proceeding from customary waiting place to discharge berth/anchorage not to count as laytime.

**DEMURRAGE DESPATCH** 23. If longer detained in loading and/or discharging ports, demurrage to be paid at the rate of USD . . USD 10,000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . per day, or in proportion for any part of a day.

Ship to pay . . . . . . . . . . . . . . . . . USD 5,000 . . . . . . . . . . . . . . . . . . . . . . . . . . per day, or in proportion, despatch money for all working time saved at both ends. Laytime to be non-reversible between loading and discharging ports, but may be reversible at Charterers' option between the ports of loading and the ports of discharging.

Demurrage or despatch to be settled directly between Owners and Charterers in accordance with the terms, conditions and exceptions of this Charter-Party. SEE ALSO CLAUSE 39-A

per day or pro rata inclusive of bunkers but less commission.
However, if the vessel waits at a place where the vessel is able to tender her notice of readiness then Charterers may elect to commence laytime as per Charter-Party.

**OVERTIME** 25. Overtime to be for account of the party ordering it. Officers and Crew overtime always to be for account of the vessel. [STEVEDORES] If ordered by Port Authorities at loading/discharging ports to be for ~~Shippers/Receivers'~~ account. [CHARTERERS]

**EXTRA INSURANCE** 26. Any extra insurance for cargo and/or prepaid freight owing to vessel's age and/or class and/or flag and/or Ownership to be for ~~Owners'~~ account, and same to be deducted without documentation from freight. [CHARTERERS]

**SEAWORTHY TRIM** 27. Should more than one load or one discharge port be used vessel to be left in seaworthy trim to Master's satisfaction for voyage between ports of loading or ports of discharging.

**STRIKES AND FORCE MAJEURE** 28. In the event that whilst at or off the loading place or discharging place the loading and/or discharging of the vessel is prevented or delayed by any of the following occurrences: strikes, riots, civil commotions, lockouts of men, accidents and/or breakdowns on railways, stoppages on railway and/or river and/or canal by ice or frost, mechanical breakdowns at mechanical loading plants, government interferences, vessel being inoperative or rendered inoperative due to the terms and conditions of employment of the Officers and Crew, time so lost shall not count as laytime or time on demurrage or detention.

**GENERAL AVERAGE** 29. General Average, if any, shall be settled in London, as per York-Antwerp Rules ~~1950~~ [1994] and subsequent amendments.

**TIME BAR** 30. Either party shall be discharged and released from all liability in respect of any claim or claims which either party may have under this Charter-Party and such claim or claims shall be totally extinguished, unless such claim or claims have been notified in detail to either party in writing within 12 (twelve) months from completion of discharge of the appropriate cargo under this Charter-Party.

**ARBITRATION** 31. All disputes from time to time arising out of, or in connection with, this Charter-Party shall, unless the parties agree forthwith on a single arbitrator, be referred to the final arbitrament of two arbitrators, one to be appointed by each of the parties, with power to such arbitrators to appoint an umpire. The arbitrators shall be commercial men with knowledge of shipping and freight matters or members of the London Maritime Arbitrators Association. The arbitration to take place in London. If a party fails to appoint an arbitrator within 14 days of being called to do so, the other party may, in order to complete the arbitration tribunal, apply to the President of the LMAA for the appointment of an arbitrator on behalf of that party.

The award of the sole arbitrator, two arbitrators or the umpire (as the case may be) shall be final and binding on both parties. No award shall be questioned or invalidated on the grounds that any of the arbitrators is not qualified as above, unless objection to his acting be taken during appointment.

By mutual agreement the parties also have the option to adopt London Maritime Arbitrators Association Small Claims Procedure.

This Charter-Party is governed by and construed in accordance with English Law.

**ARAB BLACK LIST** 32. Owners guarantee that the vessel fixed under this Charter is not wholly or partially owned by Israeli interests, and will not call at any Israeli ports from date of fixture until completion of discharge of this cargo. Owners further guarantee that this vessel is not on the Arab Black List, and undertake to provide a certificate from Arab Authorities, if so required, and allow Bills of Lading to be so attested, if requested.

**SUB-LET** 33. ~~Charterers have the option of sub-letting this Charter-Party, they remaining responsible to Owners for payment of freight and due fulfilment of terms of this Charter-Party.~~

**SATELLITE TRACKING** 34. If required by Charterers/Shippers/Receivers or the cargo underwriters, a satellite tracking device may be placed on the vessel at the port of loading, carried free of charge and removed prior to completion of discharge.

**CERTIFICATES** 35. If required by Charterers, Owners undertake to issue or otherwise supply any letters or certificates in connection with vessel's classification, registration, age, flag, gear, details of vessel's entry into P and I Club or any other certificates required by Charterers.

**BREAKING UP** 36. Owners guarantee that this vessel has not already been sold for breaking up nor will be sold for breaking up during the currency of this Charter-Party.

**PROTECTIVES** 37. War Risks Clauses 1 and 2, Both-to-Blame Collision Clause, New Jason Clause and P & I Bunkering Clause are deemed to be incorporated in this Charter-Party, AND THE BILLS OF LADING. [CLAUSE PARAMOUNT]

**SECRECY** 38. Under no circumstances are Owners and Brokers concerned in the fixture of this vessel to divulge any details of this fixture whatsoever to anyone outside their own organisation.

RIDER CLAUSES 39 TO 64 AND WAR RISKS CLAUSE "VOYWAR 1993" AS ATTACHED
ARE DEEMED TO BE INCORPORATED AS A PART OF THIS CHARTER PARTY.

THE OWNERS

PRESTIGIOUS SHIPPING COMPANY LTD

THE CHARTERERS

OWNERS

CHARTERERS

9 ir Merarchiss Street - 18535 Pirae..
Tel.: (+30)210-4133226 / Fax. (+30)210-41333.
E-Mail: chartering@trampmaritime.gr

## Rider

1st ORIGINAL

CHARTER-PARTY dated in ..................................... the .. 21ST OF FEBRUARY 2005...............

*(This Rider is deemed fully incorporated in but not to be attached to Charter-Party)*

With reference to Clause 9, "Freight as per agreement", rates of freight are to be as set hereunder:

USD 61.00 PER METRIC TON FIOS.

**FREIGHT PAID BILLS OF LADING**

~~Charterers are authorised, once the 90% freight has been remitted to mark Bills of Lading "Prepaid" or "Freight Paid".~~

**COMMISSION**

Owners to pay a commission of 6.25% to the order of Charterers, and a brokerage of 1.25% to the order of ......TRAMP MARITIME INC.,

.. AND ANGLOMAR, FOR EQUAL DIVISION ............... payable on the gross amount of freight, deadfreight and demurrage, due on

shipment of cargo, ship lost or not lost and subsequent demurrage at discharge port(s).

**OWNERS**

PRESTIGIOUS SHIPPING COMPANY LTD

**CHARTERERS**

Additional Clauses to the Charter Party of
M/V PRESTIGIOUS, account AGROCORP INTERNATIONAL PTE LTD
Dated the 21st of February 2005

**30. Vessel's Description**

MV PRESTIGIUS

FORTUNE TYPE - SELFTRIMMING
FLAG:MALTA
ABT 22669 MTS ON 9,87 M  TPC 33
BLT 1978 JPN
SUEZ CANAL: GROSS 14024 NET 11503
PANAMA CANAL: GROSS 14105 NET 11326
DIM:LOA/164,33M BEAM/22,86M
GT/NT:14126/8787
GRAIN/BALE:1,091,470/1,057,710 CBFT
5HO/5HA HATCHCVRS STEEL,JACK KNIFE - CO2 FTD
SPEED/CONS:11 KTS BSS BEAUFORT4
HATCH DIMS(LXB)
NO.1 14.10 X 12.50 M 203540 / 195240 CBFT
NO.2 16.00 X 12.50 M 247960 / 239840 CBFT
NO.3 9.80 X 12.50 M 161460 / 160760 CBFT
NO.4 16.00 X 12.50 M 244880 / 236750 CBFT
NO.5 16.00 X 12.50 M 233630 / 225120 CBFT
HOLDS DIMS - LENGTH X WIDTH X HEIGHT/HEIGHT TO CENT DIV
NO.1 24,0 M X 5,5 M FORE/19,0 M AFT X 10,4 M/9,2 M
NO.2 24,8 M X 19,2 M FORE/21,2 M AFT X 10,4 M/9,2 M
NO.3 17,6 M X 20,4 M FORE/20,4 M AFT X 10,4 M
NO.4 24,8 M X 21,2 M FORE/20,4 M AFT X 10,4 M/9,2 M
NO.5 25,7 M X 19,6 M FORE/ 9,6 M AFT X 10,4 M/9,2 M
GEAR: 5 UCG(CRANES) OF 10 TNS
CLASS: ABS
PANDI:AMERICAN CLUB
ALL DTLS ABT WOG

VENTILATION : NATURAL

TANK TOP STRENGTHS:-
FOR STEELS AND HEAVY PIECES:
HOLD NO.1. - 11.4MT PSM
HOLD NO.2. - 13.0MT PSM
HOLD NO.3. - 21.0MT PSM
HOLD NO.4. - 13.0MT PSM
HOLD NO.5. - 12.7MT PSM
FOR HOMOGENOUS CARGO (WHT ETC):-
HOLD NO.1.       - 7.3MT PSM
HOLD NOS.2/3/4  - 8.4MT PSM
HOLD NO.1.       - 8.0MT

HAS FEEDING HOLES IN THE HATCH COVERS.

Vessels UNIVERSAL CARGO GEAR are fully operative as per swl given in
descr

Vessel is fully PandI covered, which shall be maintained. VSL IS WITH THE
AMERICAN CLUB

Owners confirm/warrant that:

1

E-Mail: chartering@trampmaritime.gr

Additional Clauses to the Charter Party of
M/V PRESTIGIOUS, account AGROCORP INTERNATIONAL PTE LTD
Dated the 21st of February 2005

Vessel is in all respects suitable for the safe load, carriage
and discharge bgd sugar  and that all pertaining international
certificates are on board. Vessel to be in possesion of approved
grain loading plan in accordance with the local and international
regulations

Vessels cranes are fully operative as per swl given in descr

Vessel shall not change ownership and/or class without Charterers'
written consent.

Vessel's hull and machinery insurance shall be fully maintained
and will not be changed.

Vessel is fully PandI covered, which shall be maintained.

Vessel will not be scheduled for break up or sold for scrap during
this charter respectively upon completion of this charter.

Charterers will have free use of vessel's gear which to be left in
full working order for immediate use throughout the currency of
the Charter Party and winches serve all the hatches.

Owise as per owns reply to chrts' qnaire below which to form
part of the c/p
+++++

1)   type of ownership : ACTUAL OWNER

2)   legal name and address: PRESTIGIOUS SHG. CO. LTD. OF MALTA

2.2 owners by virtue of a charter party (please state what type of
cp) : NOT APPLICABLE

2.3 managers for the actual owners :
     FULL STYLE/ADDRESS OF OPERATING CO FOR CORRESPONDENCE
     UNIVERSAL NAVIGATION PTE LTD
     3, SHENTON WAY,  11-04, SHENTON HOUSE, SINGAPORE 068805.
     TEL:65-63241466 FAX:65-63236062 TLX:24974 UNINGN RS
     COMTEXT:A21RS861 E-MAIL: UNINAV@PACIFIC.NET.SG

2.4 managers for the actual owners by virtue of a cp (disponent
owners).: NOT APPLICABLE

2.5 bare boat owners, if any: NOT APPLLICABLE

3)   since when is the vessel under present –
3.1 ownership – APRIL 2004
3.2 management – pls state previous names – COSMO SHIPPING, PIREAUS

4)   please confirm vessel is fully classed LRS +100 A1 or equivalent
also P+I club and state:
4.1 name of the classification society and P+I club: ABS AND AMERICAN CLUB

2

Tramp Maritime Inc
9, Il Merarchias Street - 18535 Piraeus
Tel: (+30)210-4133226 / Fax: (+30)210-4133333
E-Mail: chartering@trampmant.me.gr

# 1st ORIGINAL

Additional Clauses to the Charter Party of
M/V PRESTIGIOUS, account AGROCORP INTERNATIONAL PTE LTD
Dated the 21st of February 2005

4.2 any subject (recommendations) or condition imposed by class at the present time or from the commencement of the voyage/time charter: NONE

4.3 the registry owners will authorise the classification society to release details of class to charterers: OWNERS HAVE NO OBJECTION PROVIDED CLASS DO NOT

5) please give brief history of the following if any
5.1 grounding: NONE
5.2 stranding: NONE
5.3 collision: NONE

5.4 any other serious accident or time lost for repair during the past 12 months: NO ACCIDENTS TIME LOST.

5.5 arrest of vessel: NONE
5.6 last drydock and Special Survey: 30TH JUNE 2003 ON BOTH

7) vessel's last three voyages and cargoes (commencing from last)
       BAGGED RICE  - KANDLA/NIGERIA       (SUNDERSONS)
       BULK UREA    - NANTONG/BABBAS       (HELM)
       BULK SALT    - WCINDIA/CHINA        (CHIRAI SALT INDIA)

8) insurance
8.1 p+i charterers require that the club(s) confirm that owners and/or
disponent owners have paid their calls and that vessel is fully entered
with p+i club and will be fully covered for the duration of the charter: CONFIRM

8.2 h+m charterers require confirmation that the insurance premium in respect of h+m cover has been paid and that the vessel is fully covered
and will remain in force for the duration of the charter: CONFIRM

8.3 please advise h+m value of the vessel: USD 3.3 MILLION

9) please state the validity period of following trading certificates and fax copy to charterers upon request

9.1 Safety certificates (radio/construction/equipment)
9.2 Loadline
9.3 IOPPC
9.4 Tonnage certificate
9.5 Registry
9.6 Deratting
9.7 Classification
9.8 Hull+machinery certificate
WILL SEND YOU AL THE CERTS AS AN ATTACHMENT YOU CAN PICK THE ONES OUT YOU NEED

10) Has freight and/ or charter hire and/ or receivable been assigned to any (mortagee or other) bank? NO

3

## 1st ORIGINAL

Tramp Maritime Inc
9 Il Merarchias Street - 185 35 Piraeus
Tel : (+30)210-4133226, Fax: (+30)210-4133533
E-Mail: chartering@trampmaritime.gr

Additional Clauses to the Charter Party of
M/V PRESTIGIOUS, account AGROCORP INTERNATIONAL PTE LTD
Dated the 21st of February 2005

11) Charterers nominated representative is free to board vessel at any
time to varify the replies of all this questionaire and access to
inspect the conditions of the cargo on board: OK BUT ALWAYS AT CHRTS RISK AND
TO BE COVERED ACCORDINGLY

12) Owners confirm vessel is fully ISM and ISPS code certified: CONFIRM

13) vessel to be fitted with GMDSS and telex number: CONFIRM /424831412

14) Service speed: ABT 11 KNOTS UNDER NORMAL WEATHER CONDITIONS BEAUFORT
4

Cargo:       Minimum 21.000 up to maximum 21.500 metric tons, in Owners' option
             of bagged sugar SF about 48' without guarantee.

Laydays/Canceling: 06/15 March, 2005

Freight:     USD 81.00 per metric ton FIOS

Clause 30-A.

Freight payment 95 percent less commission / agreed despatch if any at load port
to Owners within 3 banking days after completion of loading. Balance of 5
percent to be settled within 20 days after discharging along with
demurrage/despatch, if any, at discharging port supported by Statement of Facts,
Notice of Readiness and time sheets signed by all parties concerned.

Fax copies of the relevant documents (NOR / SOF etc.) to be accepted as well.

Master to load clean cargo and issue "Clean On Board" Bills of Lading. Provided
that the cargo will be "clean".

Master to have the right to reject any cargo which could cause the clausing of
the Bills of Lading and Charterers to arrange for replacement with sound one at
their time/risk/expense.

Full freight deemed earned on shipment, discountless and non-returnable, vessel
and/or cargo lost or not lost.

Owner's bank for remittance of freight, and if any deadfreight and/or demurrage
to be advised.

Clause 31.

All opening and closing of hatches to be done in Owners time and performed by
vessel's crew at Owner's expenses if permitted by local regulations, otherwise
same to be for Charterer's/Receiver's account.



4

1st ORIGINAL

amp Maritime Inc.
Velarchies Street - 185 36 Piraeus
+30 210 413 3228; Fax (+36 210 4133559
mail: chartering@trampmaritims.gr

Additional Clauses to the Charter Party of
M/V PRESTIGIOUS, account AGROCORP INTERNATIONAL PTE LTD
Dated the 21st of February 2005

Vessel has mechanical ventillation.

Clause 32.

Vessel will be held responsible for any damage to the cargo caused by master
through ventilators and leakages of water and/or oil, from pipes and or valves
and or tanks etc on board ,due to wear and tear of the above, or any cause due
to lack of due diligence.

Clause 33.

Loading Rate:      1.500 metric tons per weather working day of 24 consecutive
                   hours, Saturdays, Sundays, Holidays excluded even if used.

                   At loading port time from Saturday noon till Monday 0800 hours
                   or from 1700 hours on a day preceding legal or local holidays
                   till next working day of 0800 hours, not to count even if
                   used. No Turntime at loading port.

Discharging Rate: 2.000 metric tons per weather working day of 24 consecutive
                   hours, Thursday noon, Fridays, Holidays excluded even if used.

                   At discharging port time from Thursday 1200 hours, Fridays and
                   Holidays from 1700 hours on a day preceding legal or local
                   holidays till next working day 0800 hours, not to count even
                   if used.

Loading and discharging rate will be independently of the number of holds the
shippers / receivers will use. Master will always provide 5 ho/ha at shippers /
receivers disposal.

Clause 34.

Notice of Readiness to be tendered during office working hours Monday to Friday
between 0800 hours to 1700 hours at loading and discharging port and Saturday
0800 hours to 1200 hours at discharging port.  Master's right to tender notice
of readiness by cable/telex/VHF and time to count whether in berth or not,
whether in port or not, whether custom cleared or not, whether in free pratique
or not.

Clause 35.

Taxes and/or dues on cargo to be for Charterers / Receivers account, on vessel
and/or freight to be for Owners account. At discharge port all port dues and/or
charges on vessel, wharfages, dockage and/or berth occupancy charges to be for
Owners account.

Any taxes and/or dues on cargo including in Brazil - B.M.M. Renewal Tax, P.U.T.,
INFRAMAR Tax or local equivalent, INFRACAIS and QUOTA DA PROVIDENZIA +
CONTRIBUCIAO DA UNIAO to be for Receivers / Charterers' account.

1st ORIGINAL

...itime Inc.
... Ierarchias Street · 185 35 Piraeus
... : +30)210-4133226 · Fax: (−30)210-4133539
...ail: chartering@trampmaritime.gr

Additional Clauses to the Charter Party of
M/V PRESTIGIOUS, account AGROCORP INTERNATIONAL PTE LTD
Dated the 21st of February 2005

DA at discharge port as per ordinary / usual tariffs.

Clause 36.

**Loading port:**     1-2 safe berth Santos.

**Discharging port:** 1-2 safe berth or anchorages Chittacong.

Owners to check and satisfy themselves the draft limits, if any, at loading and
discharging ports and vessel to leave/arrive not more than the permissible draft
at respective ports. Vessel to be left in seaworthy condition and seaworthy trim
between loading and/or discharging berths/anchorages and between the discharging
ports.

Clause 37.

Time used to shift from lay-by berth, anchorage, roads to loading/discharging
berth not to count unless if vessel is already on demurrage.

Clause 38.

Vessel to be left in seaworthy trim and condition to Master's satisfaction when
shifting between berth/ports.

Clause 39.

Shifting time between berths, if any, to count as laytime, but all shifting
expenses between first and second berths only, both ends, to be for Owners
account.

Clause 40.

Cargo to be loaded in vessel's mainholds only, no option part cargo(es), no
cargo to be loaded deeptanks.   Extra trimming , if required, to be for
Charterers account.

Clause 41.

Owners to issue "freight payable as per charter party "bills of lading at load
port upon completion of loading by shippers  and issue switch FRT PREPAID ,
bills of lading in Singapore through their protective agents against
surrender/inexchange of first set bills of lading issued at loadport. The bills
of lading maybe split in smaller lots and notify party name may be changed ,but
the body of the bills of lading i.e commodity/specs/quantity and quality of the
cargo -load-discharge ports etc remaining same of course after payment of
freight.

Charterers are entitled to split and/or reissue new set of Bills of Lading. All
original Bills of Lading to be cancelled and surrendered to Owners or their

Tramp Maritime Inc.
9 Il Merarchias Street · 185 35 Piraeus
Tel. (+30)2104133226; Fax (+30)2104133553
E-Mail: chartering@trampmaritime.gr

## 1st ORIGINAL

Additional Clauses to the Charter Party of
M/V PRESTIGIOUS, account AGROCORP INTERNATIONAL PTE LTD
Dated the 21st of February 2005

---

appointed representatives prior to issue of new set of Bills. Charterers to fax
new set to Owners for their prior approval.

"FRT PREPAID" bills of lading will be released only after ows will receive the
100 pct of the freight in their bank account if "freight payable as per charter
party" bills of lading then 95 pct freight payment.

Owners will be responsible only to deliver the whole quantity of cargo as stated
in the bills of lading. Owners will not be responsible for the quantity
delivered to each delivery order holder. Charterers will indemnify the Owners
with letter of indemnity as per owners standard P & I Club wording.

Owners have the option to arrange for their own tally / sealing of the cargo at
their expense.

Only Clean Bills of Lading to be issued.

**Clause 42.**

Vessel is fully geared as per Clause 30, Master/Owners to provide valid cargo
gear certificate issued by vessel's classification society.

**Clause 43.**

If vessel is placed under quarantine by reason of crew by health authorities for
health reasons time not to count until such quarantine is lifted.

**Clause 44.**

Owners warrant vessel does not require any bagging, strapping and/or securing of
the cargo when sailing between load port and discharging port.

**Clause 45.**

Master to give notice by telex/cable to 7/5/3/2/1 arrival notices at load port
and discharging port agents on sailing from loading port and 3/2/1 day(s)
estimated time of arrival.

**Clause 46.**

Charterers to be allowed to fumigate the cargo at their risk, responsibility and
expenses, at loading and/or discharging port(s) during / after loading
respectively before / during discharge any additional time used for fumigation
to count as laytime. Costs for fumigation and lodging expenses of crew, if
required by port authorities or by the recommendations of the party carrying out
the fumigation or due to the nature of the fumigant to stay ashore, to be for
Charterers' account.

Fumigation to be always as per the internatoinal health regulations

Additional Clauses to the Charter Party of
M/V PRESTIGIOUS, account AGROCORP INTERNATIONAL PTE LTD
Dated the 21st of February 2005

**Clause 47.**

Demurrage US$ 10.000 per day, pro rata, half despatch payable to Charterers on
working time saved, both ends. Demurrage / despatch, at both ends, to be settled
directly between Owners and Charterers. Charterers shall remain responsible for
any demurrage at loading and discharging ports.

**Clause 48. BIMCO ISM Clause**

From the date of coming into force of the International Safety Management (ISM)
Code in relation to the vessel and thereafter during the currency of this
Charter Party, the Owners shall procure that both the vessel and "The Company"
(as defined by the ISM Code) shall comply with the requirements of the ISM Code.

Upon request the Owners shall provide a copy of the relevant Document of
Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or
delay caused by failure on part of the Owners or "The Company" to comply with
the ISM Code shall be for Owners' account.

**Clause 49.**

Vessel to be free of any extra insurance and overage premium.

**Clause 50.**

Owners undertake that if required by Shipper's/Stevedore's to facilitate the
loading the vessel shall warp along the quay at Owner's expenses, but in
Charterer's time. If during warping will be needed to use tug boats a/o pilot,
the cost of same to be for Charterers' account.

**Clause 51.**

Charterer's nominated agents at loading and discharging port(s), with Owners
paying customary port disbursement and agency fees.

**Clause 52.**

In tendering notice of readiness at load port, vessel's holds/hatches to be
presented in clean/good and absolute working conditions, dried, free of previous
cargo residues, rust pieces, insects and up to the satisfaction of Shippers/
Charterers surveyors for loading intended cargo as regard the cleanless /
dryness / odourless of the holds.

In case vessel fails on hatch/ hold inspection, time not to count proportionally
from the time that each hold was rejected till the time that each hold is ready
for loading and passes the survey.

In case of dispute abt vessel's hold cleanliness then an independent surveyor to

1st ORIGINAL
...3028 / Fax: (~3012*04*35552
Mail: chartering@trampmaritime.gr

Additional Clauses to the Charter Party of
M/V PRESTIGIOUS, account AGROCORP INTERNATIONAL PTE LTD
Dated the 21st of February 2005

be appointed and his findings to be final and binding on both parties. Surveyors expenses to be for the party in default'

**Clause 53.**

As per BIMCO standard law and arbitration clause section 1, for small claims procedure amount shall not exceed US$50,000.00 excluding interest and costs. All arbitrators shall be members of the LMAA who are experienced with all commercial shipping matters.  This Charter Party shall be construed in accordance with English Law.

Arbitration in London.

**Clause 54.**

Charterers will make every endeavour to ensure that original Bills of Lading are available at discharging port on or prior vessel's arrival at discharge port. However, if original Bills of Lading are not available at discharge port then Owners/Master to permit discharge of cargo without delays against Charterers Letter of Indemnity as per Owners P. and I. Club wordings, signed by the Charterers and by the receivers (or two l.o.i(s) one signed by chrtrs and another one signed by receivers). Charterers to name theese receivers prior signing bs/l. Original Bills of Lading to be forwarded to Owners as soon as is becomes available.

**Clause 55.**

Deleted.

**Clause 56.**

Owners confirm that the vessel is free of liens, mortgages and threat of arrests.

**Clause 57.**

Surf days to count as laytime, exept if no any load/disch operation at the port with other vessels.

**Clause 58.**

The following clause shall be deemed to be fully incorporated in the Charter Party and in all Bills of Lading issued hereunder:

    A. Clause Paramount
    B. Both-to-Blame Collision Clause
    C. New Jason Clause
    D. Voywar
    E. Arbitration Clause
    F. P. and I. Bunkering Clause
    G. ISPS Bimco Clause to apply

9

# 1st ORIGINAL

ramp Maritime Inc
J.H. Merarchias Street - 185 35 Firaas
Tel: (+30)210 4133228, Fax: (-30)210 4133555
E-Mail: chartering@trampmaritime.gr

Additional Clauses to the Charter Party of
M/V PRESTIGIOUS, account AGROCORP INTERNATIONAL PTE LTD
Dated the 21st of February 2005

**Clause 59.**

Owners confirm that the vessel has not met with any accidents or damages in the past one year.

**Clause 60.**

At loading port Owners to be responsible for paying, port agents up to maximum the first USD 40.000 for port D/AS and Charterers to pay port D/AS, if any, above this amount. It is understood port D/AS to include cost of supplying and laying of kraft paper and labour. Owners expenses / items (fresh water, cash to Master, medical, repairs, provisions, and crew matters etc.) to be always for Owners account.

**Clause 61.**

Vessel to be suitable for loading and carriage of intended cargo of bagged sugar.

**Clause 62. Freight payment**

Freight may only be paid to Head Owners or disponent owns of the vessel, provided that head owners will provide a letter that charterers can pay freight to managers.

Should Head Owners require freight payment to be made to an alternative beneficiary, then such payment is only to be made upon receipt by Charterers a duly authorized letter signed by all directors of the headowing company.

**Clause 63.**

Owners to allow Master to give vessel position from time to time as per Charterers nominated bankers to be in touch giving vessel positions via telex/inmarsat and giving vessel telex/inmarsat numbers.

**Clause 64.**

Basic war risk insurance / additional war risk insurance if any, at time of chartering to be for Owners account. Any increase in additional premium after Charter Party date to be for Charterers account.

**The Owners**

PRESTICIOUS SHIPPING COMPANY LTD

**The Charterers**

10

# EXHIBIT 8

HARIDASS HO & PARTNERS

'07 MAR 23  17:37

RECEIVED

IN THE MATTER OF AN ARBITRATION

Between

PRESTIGIOUS SHIPPING CO. LTD.

... Claimants

And

AGROCORP INTERNATIONAL PTE LTD

... Respondents

## POINTS OF CLAIM

1.   The Claimants are owners of the ship or vessel M.V. "Prestigious" (the "Vessel").   By a charterparty dated 21st February 2005 on Sugar Charterparty 1999 form with additional clauses (the "Charterparty"), the Respondents chartered the Vessel for a shipment of a cargo of "minimum/maximum 21.000 metric tons up to max 21.500 metric tons in owners' option of bagged sugar sf about 48' without guarantee" from "1 – 2 safe berth Santos" to "1 – 2 safe berth and/or anchorages Chittagong" and there deliver the Cargo.   A copy of the Charterparty is annexed herewith and marked as "Annex 1".

2.   The Claimants will refer the Charterparty as may be necessary for its full terms and effect.

Background Facts

3.   Pursuant to the Charterparty, the Vessel proceeded to Santos and loaded a total cargo of 430,000 bags of sugar, weighing a total of some 21,500.000 mt

2

(the "Cargo").  In respect of this, 23 bills of lading were issued on the Congenbill 1994 form.  Copies of the aforesaid bills of lading are collectively annexed herewith at "**Annex 2**".

4.  The Vessel sailed from Santos on 15th April 2005 at 0030 hours and proceeded to Chittagong, the Respondents' nominated discharge port.  The Vessel arrived at Chittagong on 1st June 2005, and notice of readiness was tendered at 1900 hours LT to the Respondents' agents M/s Mutual Shipping Limited (hereinafter the "Respondents' Nominated Agents").  A copy of the notice of readiness is annexed herewith and marked as "**Annex 3**".

5.  Clause 22 of the Charterparty provides, inter alia:–

> *"At discharging port, … laytime for discharge to begin … at 0800 hours next working day if written / cabled / telexed notice of readiness is tendered after noon.*
>
> *Master has the right to tender notice of readiness from the customary waiting place in ordinary office hours.*
>
> *Notice of readiness to be tendered to Agents in ordinary office hours (or local equivalents) and holidays excepted whether in berth or not / WIPON / WIFCON / WICCON.*

6.  In the premises and pursuant to the Charterparty, laytime for discharge of the Cargo commenced on Saturday, 4th June 2005 at 0800 hours, when the Vessel was ready in all respects to discharge the cargo.

7.  Pursuant to the Charterparty, the Vessel was to discharge the Cargo at an average rate of 2,000 metric tons per weather working day of 24 consecutive hours, and time from Thursday 1200 hours, Fridays and Holidays from 1700 hours on a day preceding legal or local holidays till next working day 0800 hours, not to count even if used.

8.  Clause 22 provides as follows, inter alia:–

3

> *Ship to discharge at the average rate of 2,000 metric tons calculated on gross weight provided vessel can deliver at this rate, per weather working day of 24 consecutive hours, time from Thursdays noon to 0800 hours Saturdays (or local equivalents) and from 1700 hours day preceding a holiday as per Bimco calendar until 0800 hours next working day excepted, even if used.*

9.    Further, Clause 33 of the Charterparty provides as follows, inter alia:-

> **Discharging Rate**
> *2,000 metric tons per weather working day of 24 consecutive hours, Thursday noon, Fridays, Holidays excluded even if used.*
>
> *At discharging port time from Thursday 1200 hours, Fridays and Holidays from 1700 hours on a day preceding legal or local holidays till next working day 0800 hours, not to count even if used.*
>
> *Loading and discharging rate will be independently of the number of holds the shippers / receivers will use.  Master will always provide 5 ho/ha at shippers / receivers disposal.*

10.   In the premises, laytime for the discharge of the cargo expired at 1057 hours on 20th June 2005 and consequently, the Vessel was on demurrage from 1057 hours on 20th June 2005.  Demurrage begun to run and continued to run from 20th June 2005 until final discharge of the cargo laden onboard the Vessel.

11.   In breach of the Charterparty, the Vessel did not complete the discharge of the Vessel until 15th November 2005 at 0430 hours LT, for reasons particularized in paragraphs 16 to 37 below.

12.   Accordingly, the Vessel was on demurrage for 146 days 10 hours and 29 minutes (approximately 146.44 days), as particularized in the laytime statement of facts attached herewith and marked as "**Annex 4**".

13.   Clause 23 of the Charterparty provides, inter alia:-

4

> *If longer detained in loading and/or discharging ports, demurrage to be paid at the rate of USD10,000 per day, or in proportion for any part of a day.*
>
> *...*
>
> *Laytime to be non-reversible between loading and discharging ports.*
>
> *Demurrage or dispatch to be settled directly between Owners and Charterers in accordance with the terms, conditions and exceptions of this Charterparty.*

14.    Further, Clause 47 of the Charterparty provides:-

> *Demurrage US$ 10,000 per day, pro rata, half dispatch payable to Charterers on working time saved, both ends. Demurrage / dispatch, at both ends, to be settled directly between Owners and Charterers. Charterers shall remain responsible for any demurrage at loading and discharging ports.* (emphasis ours)

15.    In the premises and by reason of the Respondents' breach of Charterparty, there is now due and owing demurrage in the sum of USD1,464,368.06. However, despite the Claimants' repeated demands, the Respondents have failed and/or refused to pay the sum of USD1,464,368.06 or any part thereof.

<u>Respondents' Failure to Procure Discharge of the Vessel</u>

16.    The settled and well established custom of practice at Chittagong is that the consignee together with the customs officer would board the Vessel and draw samples of the cargo for compulsory radiation test prior to customs clearance. After the completion of the radiation tests, the consignee would proceed to obtain a reduction of taxes and/or customs duty at the Chittagong courts.

17.    Clause 14 of the Charterparty provides:-

> *Stevedores FIOST*
> *Stevedores for loading, stowing, trimming and discharging to be employed by Charterers or Shippers/Receivers at their expense and under Master's*

5

*control. Stevedores shall be considered as Owners servants, and the Charterers/Shippers/Receivers are not to be responsible for any negligence of whatsoever nature, default or error in judgment of the stevedores employed.*

18. Pursuant to the said Clause 22 of the Charterparty, the Respondents were under an express and/or an implied duty to ensure that the Cargo was discharged within the laytime allowed.

19. However, in breach of the Charterparty, the Respondents failed to ensure that the Cargo was discharged within the laytime provided.

**Failure to ensure that documentary formalities for the Vessel to discharge the cargo were complied with**

20. On or about 30th May 2005, prior to the Vessel's arrival at Chittagong, the Claimants' protective agents, M/s Safe Shipping Lines (hereinafter the "Claimants' Protective Agents"), requested the Respondents to clear and/or discharge the Cargo by lightening the Vessel against a special 78–Customs guarantee from Chittagong Customs House whilst waiting for the consignees to clear documentation from the Chittagong courts and/or customs. The lightening of the Vessel was necessary so as to enable the Vessel to go alongside at berth as the Vessel's draft would not allow her to enter the shallow berth to commence discharge of the Cargo. A copy of the Claimants' Protective Agents' email to the Claimants dated 30th May 2005 is annexed herewith at "**Annex 5**".

21. However, from 1st June 2005 to 12th June 2005, whilst the Vessel was at Chittagong, the Vessel was unable to discharge the Cargo as the documentary formalities for the Vessel to discharge the cargo laden onboard were not ready and completed by the Respondents and/or their agents and/or their receivers. Copies of the Vessel's daily reports and

6

correspondence showing the chain of events from 1st June 2005 to 12th June 2005 are collectively annexed herewith at "**Annex 6**".

22.    In breach of the Charterparty to ensure that the Vessel would be discharged within the laytime allowed and/or their duty to discharge cargo, it was only at 0330 hours on 13th June 2005 that the Respondents, their agents and/or servants commenced the lightening of the Vessel after completion of the documentary formalities for the lightening of the Vessel by the Respondents, their agents and/or receivers.  However, after lightening of the Vessel at anchorage, the Vessel could not berth until 7th July 2005 at 1336 hours as a berth was not available.  A copy of the discharge report dated 13th June 2005 and 8th July 2005 are collectively annexed herewith at "**Annex 7**".

<u>Failure to procure the "No Objection" certificate in order for the Vessel to discharge the cargo</u>

23.    Notwithstanding that the documentary formalities in respect of the lightening of the Vessel was procured, the Respondents were nevertheless unable to discharge the Cargo as the "No Objection" certificate was not procured by the Respondents, their agents or servants and/or their receivers. Consequently, the Cargo could not be discharged from the Vessel, which resulted in further delay and detention of the Vessel.

24.    Pursuant to Clause 14 of the Charterparty, The Claimants aver that the Respondents' obligations were to discharge the Vessel.  Clause 14 of the Charterparty provides inter alia that "*Stevedores for ... discharging to be employed by Charterers or Shippers/Receivers at their expense and under Master's control.*"

25.    The Claimants also repeatedly sought the Respondents to obtain the "No Objection" certificate in order to complete customs formalities and to enable

7

the discharge of the Cargo from the Vessel, but the Respondents failed and/or neglected and/or refused to do so and/or they failed to assist and/or to provide the consent timeously to the Claimants' agent, M/s Hudson & Higgins, completing custom formalities to carry out discharge instead.

26.    In the premises, the Respondents are in breach of the terms of the Charterparty, resulting in the demurrage being incurred and the detention of the Vessel.

27.    As a result of the Respondents' breach of the Charterparty and/or their duty and/or refusal to take delivery of and/or failure to discharge the Cargo laden onboard the Vessel, the Claimants were exposed to claims from M/s East West Trading and M/s Musa & Sons (collectively, the "Receivers") for delay in the delivery of the Cargo to them. The Vessel was further delayed from discharge as the Receivers were demanding payments for the alleged damage of the cargo and the parties were put to negotiate the quantum of payments to be made to the Receivers, which resulted in further delays to the Vessel. Copies of notices from the Receivers are collectively annexed herewith at "Annex 8".

28.    Additionally, the Claimants aver that the Respondents' refusal and/or failure to take delivery of and/or discharge the cargo in hold number 1 resulted in the hold-up and further delays in discharge of any cargoes from the Vessel's other holds. The Claimants aver that discharging the cargo in hold number 1 by the Respondents was particularly important to facilitate the discharge of the cargo from other holds as a result of the trim of the Vessel and to ensure that the Vessel would not be subjected to structural stresses which could result in damage to the Vessel's hull.

29.    The Claimants engaged in many discussions with the Respondents and the Receivers to procure the discharge of the Vessel, which resulted in even

8

further delays to the Vessel. In the course of these discussions, the Respondents verbally informed the Claimants that if the sum of USD 1.1 million were paid to the Receivers, then the Claimants' claim for demurrage of the Vessel against the Receivers would not be prejudiced and that the claim would remain alive, but that if the Claimants paid the sum of USD 1 million, this would be in compromise of the Claimants' claim for demurrage.

30.- In mitigation and to avoid incurring further losses through delay and/or detention of the Vessel, as well as to avoid causing damage to the Vessel, the Claimants agreed to execute an Amicable Settlement Agreement dated 7th August 2005 with the Receivers, so as to expedite the discharge of the Cargo and to prevent the Vessel from damage. In consideration of the Claimants paying the sum of USD 1.1 million in respect of the remaining 3,805 mt of cargo in hold number 1, the Receivers would give to the Claimants the "No Objection" certificate to obtain permission for the discharge and the destruction of the allegedly damaged cargo by M/s Hudson & Higgins at the Claimants' risk, time, responsibility and expenses. A copy of the Amicable Settlement Agreement dated 7th August 2005, together with the Addendum Settlement Agreement of even date are collectively annexed herewith at "Annex 9".

31. The USD 1.1 million that was paid to the Receivers was not the invoice value of the cargo concerned. The invoice value for M/s Musa & Sons' cargo is USD 144,095.00 (805 MT @ USD 179 per MT) and the invoice value for M/s East West Trading's cargo is USD 537,000.00 (3,000 MT @ USD 179 per MT), i.e. a total invoice value of USD 681,095.00.

32. The Receivers confirmed receipt of the funds of USD 1.1 million on 8th August 2005 and the "No Objection" certificate was eventually issued on 10th August 2005, which the Receivers had held back from giving the Claimants. The "No Objection" certificate would have expedited the discharge of the

9

Vessel and consequently resulted in substantial delay to the Vessel. A copy of the confirmation and email are collectively annexed herewith at "Annex 10". As the "No Objection" certificate was only provided on 10th August 2005, this coincided with the monsoon / wet season at Chittagong, which resulted in even further delays to the Vessel's discharge of the cargo. As a result of the Respondents' breach and/or failure to discharge, and consequently the difficulties in the discharge of the cargo, the Claimants were faced with added bureaucracy of obtaining numerous permits and permissions from the Chittagong Customs Authorities and other authorities at Chittagong such as the Department of Environment, Department & Forest Ministry, Controller of Movement & Storage, Port Police Station, Sea Fish Survey Management Unit (Fishing Directorate).

33.  The discharge of the Cargo from the Vessel eventually commenced only on 16th September 2005.

34.  On or about 29th September 2005, it was alleged by the Receivers that there may be some damage to the cargo in hold number 3 which led to cargo discharge being stopped from the Vessel. In order to expedite the process of the discharge of the cargo in mitigation of their loss and to avoid delay, the Claimants paid the sum of USD 500,000.00 to the Receivers, whereupon discharge re-commenced. The quantity of the cargo allegedly damaged in hold number 3 was 1,104 mt, and the sum of USD 500,000.00 was derived at a price of USD 572 per mt, some USD 139 per mt more than her invoice value of USD 179 per mt, customs duty value at USD 231 per mt and stevedoring expenses at USD 18 per mt. Copies of the exchanges of emails regarding settlement of the discharge of the cargo in hold number 3, the claim bill and the remittance confirmation are collectively annexed at "Annex 11".

10

35.   Even taking the steps aforesaid at paragraphs 30 to 34 above, i.e. that the sums of USD 1.1 million and USD 500,000.00 have been paid to the Receivers to procure her discharge, the Respondents failed to and/or neglected to and/or refused to expedite the discharge of the Cargo from the Vessel and/or delays which resulted as aforesaid in paragraph 32 above, the discharge was only completed on 15th November 2005 at 0430 hours, resulting in the Vessel's delay and detention.

36.   The Vessel eventually sailed out from Chittagong on 24th November 2005 at 2320 LT. A copy of the Master's report is annexed herewith at "Annex 12".

37.   In the premises, the Respondents suffered losses and/or damages by reason of the Respondents' said breach and/or breaches of the Charterparty.

**AND THE CLAIMANTS CLAIM:-**

(i)    Pursuant to paragraph 15 above, demurrage due in the sum of USD1,464,368.06;

(ii)   A declaration that the Claimants be indemnified and an indemnity for the Charterers' refusal to take delivery of the Cargo and any other incidental losses arising from the Charterers' breach in not taking delivery of the cargo in hold no. 1 in the sum of USD 418.905.00, being the difference between what the Claimants paid to the Receivers in the sum of USD 1,100,000.00 less the invoice value for M/s Musa & Sons' cargo in the sum of USD 144,095.00 and the invoice value for M/s East West Trading's cargo in the sum of USD 537,000.00;

(iii)  A declaration that the Claimants be indemnified and an indemnity for the Charterers' refusal to take delivery of the Cargo and any other incidental

11

losses arising from the Charterers' breach in not taking delivery of the cargo in hold no. 3 in the sum of USD 27,488.00, being the difference between what the Claimants paid to the Receivers in the sum of USD 500,000.00 less the invoice value including customs duty value and stevedoring expenses for the cargo in the sum of USD 472,512.00;

(iv)    Such further and other relief that this Honourable Tribunal deems fit;

(v)    Interest;

(vi)    Costs.

Dated this 23 day of March 2007

SOLICITORS FOR THE CLAIMANTS

M/S JOSEPH TAN JUDE BENNY